**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 94-5754

KARL V. DAVID,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-94-39)

Argued: November 3, 1995

Decided: May 6, 1996

Before ERVIN, WILKINS, and LUTTIG, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Luttig wrote the
opinion, in which Judge Ervin and Judge Wilkins joined. Judge Ervin
wrote a specially concurring opinion.

_____

**COUNSEL**

**ARGUED:** Lee W. Kilduff, MORCHOWER, LUXTON & WHA-
LEY, Richmond, Virginia, for Appellant. N. George Metcalf, Assis-
tant United States Attorney, Richmond, Virginia, for Appellee. **ON
BRIEF:** Michael Morchower, MORCHOWER, LUXTON & WHA-
LEY, Richmond, Virginia, for Appellant. Helen F. Fahey, United
States Attorney, Kieran Grennan, Third Year Law Student Intern,
Richmond, Virginia, for Appellee.

**OPINION**

LUTTIG, Circuit Judge:

Appellant, Karl David, was convicted by a jury of making a false statement on a form submitted to the Bureau of Alcohol, Tobacco and Firearms, in violation of 18 U.S.C. § 1001. David now claims that under the Supreme Court's subsequent decision in United States v. Gaudin, 115 S. Ct. 2310 (1995), his conviction must be overturned because the district court failed to submit the question of materiality to the jury despite his Fifth and Sixth Amendment rights to have a jury determine every element of the crime with which he was charged. Since David never objected to the district court's jury instructions, we review his conviction for plain error under Federal Rule of Criminal Procedure 52(b). We agree that in light of Gaudin, which is to be applied retroactively to all cases on direct review, see Griffith v. Kentucky, 479 U.S. 314, 328 (1987), the failure to instruct this particular jury on the element of materiality constitutes plain error. Therefore, we vacate David's conviction and remand for a new trial.

I.

David had been a federally licensed firearms dealer for approximately six years before the incident at issue in this case. In March of 1994, the month before his federal firearms license was to expire, David obtained an application to renew his license. The application included a number of questions, one of which was the following:

> 1. Are you presently under indictment or information in any court for a crime punishable by imprisonment for a term exceeding 1 year?
>
> (If yes, attach an explanatory statement showing the date of the indictment or information and the court in which it is pending. "INFORMATION" means a formal accusation of a crime made by a prosecuting attorney as distinguished from an indictment presented to a grand jury.).

2

David answered this question "NO." At the time, David was under indictment for embezzlement in Caroline County, Virginia. The indictment explained the possible punishments for embezzlement as follows:

> PUNISHMENT: Imprisonment for not less than one nor more than twenty years, or in the discretion of the jury or the Court trying the case without a jury by confinement in jail for a period not exceeding twelve months and a fine of not more than $2,500.00; either or both.

As a result of David's answer, the government charged David with knowingly making a false statement to a department or agency of the United States in violation of 18 U.S.C. § 1001.**1** To establish a violation of section 1001, the prosecution must prove that: (1) the defendant made a false statement to a governmental agency; (2) the defendant acted knowingly or willfully; and (3) the false statement was material to a matter within the jurisdiction of an agency.**2** See, e.g., United States v. Arch Trading Co., 987 F.2d 1087, 1095 (4th Cir. 1993). Pursuant to longstanding Fourth Circuit precedent, the district court did not submit the question of materiality to the jury, but, rather, instructed that "[t]he court will decide . . . element four, regarding materiality." See Appellant's Mot. to Supplement Arg. at 7.

The district court's instruction, though faithful to then-existing law, turned out to be in error when, in Gaudin, a unanimous Supreme Court held that the Fifth and Sixth Amendments require that the ele-

_____

**1** 18 U.S.C. § 1001 provides in relevant part:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully . . . makes any false, fictitious or fraudulent statements or representations . . . shall be fined under this title or imprisoned not more than five years, or both.

**2** "The test of materiality is whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action." United States v. Norris , 749 F.2d 1116, 1122 (4th Cir. 1984), cert. denied, 471 U.S. 1065 (1985); see also Kungys v. United States, 485 U.S. 759, 770 (1988); Gaudin, 115 S. Ct. at 2313.

3

ment of materiality in section 1001 must be submitted to the jury.**3** 115 S. Ct. at 2320 ("The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged."). On the authority of Gaudin, David now contends that he is entitled to a new trial in which the question of materiality would be submitted to the jury. Because he raised no objection to the court's instruction that it would decide materiality, we review the failure to submit the question of materiality to the jury for plain error under Federal Rule of Criminal Procedure 52(b).

II.

Appellate authority to review errors not brought to the attention of the district court and thus not otherwise cognizable on appeal**4** is found in Federal Rule of Criminal Procedure 52(b), which provides:

> Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

The Supreme Court recently clarified the scope and requirements of Rule 52(b) in United States v. Olano, 113 S. Ct. 1770 (1993). Noting that "the authority created by Rule 52(b) is circumscribed," the Court held that, before an appellate court can correct an error not raised at

_____

**3** In his concurrence in Gaudin , the Chief Justice emphasized that the Court did not purport to resolve the conflict over whether materiality is necessarily an element of 18 U.S.C. § 1001, but rather "merely assume[d] that materiality is, in fact, an element of the false statement clause of § 1001." Gaudin, 115 S. Ct. at 2320-21 (Rehnquist, C.J., concurring); see Gaudin, 115 S. Ct. at 2313 ("It is uncontested that conviction under this provision requires that the statements be `material' . . . ."). Neither party in the case before us questions this circuit's precedent that materiality is an element of section 1001. Arch Trading Co., 987 F.2d at 1095.

**4** Federal Rule of Criminal Procedure 30 provides, in relevant part, that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict."

trial, Rule 52(b) requires: 1) "error"; 2) that is "plain"; and 3) that "affect[s] substantial rights." Id. at 1776. Even then, "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the Court of Appeals, and the court should not exercise that discretion unless the error `"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" Id. (quoting United States v. Young, 470 U.S. 1, 15 (1985) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936))). The Court also explained that Rule 52(b), which "defines a single category of forfeited-but-reversible error," is the sole source of appellate authority to correct a forfeited error,[5] unless some other provision authorizes its correction. Id. at 1776-77.

A.

Turning to the first element in the "plain error" analysis, we have no hesitation concluding that the district court committed an error in this case. Although the district court's instruction that materiality would be decided by the court was proper at the time it was given, we now know that the element of materiality in section 1001 must be submitted to the jury. See Gaudin, 115 S. Ct. at 2320. Since a "new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review .. . , with no exception for cases in which the new rule constitutes a `clear break' with the past," Griffith 479 U.S. at 328, David is entitled to the benefit of the new rule for the purposes of determining whether the district court committed an error. Thus, the district court erred in failing to submit the question of materiality to the jury.

_____

**5** Forfeiture is the "failure to make the timely assertion of a right." Olano, 113 S. Ct. at 1777. Waiver, on the other hand, is the "`intentional relinquishment or abandonment of a known right.'" Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). The important distinction between forfeiture and waiver is that if a defendant waives a right (which is waivable), he cannot later raise an objection on the grounds that the failure to provide him with the waived right is error. See id. That is, waiver, unlike forfeiture, may "extinguish" an "error" under Rule 52(b). See id.

5

B.

The question of whether the error committed by the district court is "plain" is not as easily resolved. In Olano, the Supreme Court defined "plain" as "synonymous with `clear' or, equivalently, `obvious.'" 113 S. Ct. at 1777. Although the Court defined the word "plain" perhaps as clearly as that word can be defined in the context of the plain error analysis, it was somewhat elliptical on the important question of when the error must be plain in order for an appellate court to take cognizance of the error, stating only that,

> [t]he second limitation on appellate authority under Rule 52(b) is that the error be "plain." "Plain" is synonymous with "clear" or, equivalently, "obvious." See [United States v.] Young, [470 U.S. 1,] 17 n.14[(1985)]; United States v. Frady, 456 U.S. 152, 163 (1982). We need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified. At a minimum, the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.

Id. (emphasis added); see also United States v. Marder, 48 F.3d 564, 573 (1st Cir.) (noting circuit split over when an error must be plain, in the course of declining to answer the "considerably more complicated" question of when an error is "plain"), cert. denied, 115 S. Ct. 1441 (1995). Because this passage from Olano is so central to an understanding of the "plain" requirement of the plain error analysis, and its meaning has proven so elusive, we begin by addressing ourselves to this passage and to the deceptively complex issues it raises.

1.

We can conceive of at least four different circumstances envisaged by the Court in this passage: A) where an error is clear both at the time of trial and at the time of appeal; B) where an error is "unclear at the time of trial but becomes clear on appeal"; C) where an error is clear at the time of trial but unclear at the time of appeal; or D) where an error is unclear both at the time of the trial and at the time of appeal. It seems to us that the passage is best understood as autho-

rizing appellate review of forfeited errors in Circumstance A, barring review of such errors in Circumstances C and D, and as reserving judgment on whether forfeited errors arising under Circumstance B are reviewable, but suggesting that they too might well not be reviewable.

Although the Court does not so state expressly, the clear implication from sentences three and four of the passage, as would be expected, is that a court of appeals is authorized to invoke its powers under Rule 52(b) to review an error when the error was plain at trial and is also plain on appeal (Circumstance A). We believe that Circumstance A must be the "ordinary case" to which the Court implicitly makes reference through its identification of the "special case." Equally clearly, the final sentence of the paragraph categorically forecloses appellate review whenever the error is unclear at the time of appeal (Circumstances C and D), regardless of whether the error was clear at the time of trial. And, of course, the Court expressly declined to decide whether the so-called "special case," where an error that "was unclear at the time of trial . . . becomes clear on appeal because the applicable law has been clarified" (Circumstance B), would be reviewable.

The contours of Circumstances A, C, and D, are evident, and that there would be review in the first, but not in the latter two, of these circumstances seems obvious as well. We confess that we are less than certain from the Court's description what it understood to be the special case (Circumstance B). It seems to us, however, that, at least as literally described, the special case would include only the circumstance where an error was unclear at the time of trial because of conflicting or ambiguous caselaw. In saying this, we recognize that the Court's description of the special case could arguably be understood as including the circumstance where, at the time of trial, it was quite clear that the district court's action was not at all error, but, as a consequence of a reversal of that law, it is clear on appeal that the action was in fact error. A number of our sister circuits have even summarily concluded that this circumstance is the special case contemplated by the Court. See, e.g., United States v. Ross, No. 92-1449, 1996 WL 41564, at *8 (7th Cir. Feb. 2, 1996); United States v. Keys, 67 F.3d 801, 809 (9th Cir. 1995); United States v. Viola, 35 F.3d 37, 41 (2d Cir. 1994), cert. denied, 115 S. Ct. 1270 (1995); United States v.

7

Retos, 25 F.3d 1220, 1230 (3d Cir. 1994). We believe, however, that it is simply too strained to describe this circumstance as one where the error was unclear at the time of trial and the law has subsequently been clarified -- at least in any sense in which we generally use those terms. We suppose that it might be said, drawing upon either the traditional common law notion that the law exists and is only to be discovered by the courts or the legal realist view that the law is never clear, that the error was "unclear"; but we can think of no sense in which it could reasonably be said that the outright reversal of well-established law constitutes a "clarification" of the law.

Thus, as we understand the special case, it is precisely the circumstance where it is most obvious that review should not be authorized: If the contemporaneous objection requirement is to have any real force, presumably an objection would be required (and review would be barred for failure to object) in the circumstance where the law at the time of trial is unclear as to whether the district court's proposed course would constitute error.[6] A timely objection in such a circumstance would provide the court an opportunity to consider the question, possibly avoid the commission of an error, and thereby prevent the need for retrial upon appellate reversal -- the very purposes of the contemporaneous objection rule. Moreover, declining to review forfeited errors under the circumstance of the special case also would serve as a disincentive to defendants who would forego an objection

_____

[6] We have been and remain somewhat puzzled as to why the Court did not categorically foreclose review in the special case, if the Court understood that case as we do. It may be that the Court was simply unsure of the implications of its decision in Griffith. In our view, however, Griffith's holding that a defendant whose direct appeal is pending receives the benefit of a new rule for purposes of determining whether the district court erred, bears not at all on the second requirement of Olano, that the error be "plain." Regardless, we believe that a defendant who objects to an alleged error (as did the defendant in Griffith) is not "similarly situated," Griffith, 479 U.S. at 327, to a defendant who did not, and so a new rule created for the former need not be deemed plain for the latter. Cf. Olano, 113 S. Ct. at 1776 ("`No procedural principle is more familiar to this Court than that a constitutional right . . . may be forfeited in criminal [cases] by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" (quoting Yakus v. United States, 321 U.S. 414, 444 (1944))).

8

at trial for tactical reasons, knowing that they intended to claim on appeal that the district court's action to which they did not object constitutes reversible error. See Wainwright v. Sykes, 433 U.S. 72, 89 (1977). In short, to allow review under the circumstance of the special case would disturb Rule 52(b)'s "`careful balanc[e] of [the] need to encourage all trial participants to seek a fair and accurate trial the first time around [and] our insistence that obvious injustice be promptly redressed,'" United States v. Young , 470 U.S. 1, 15 (1985) (quoting Frady, 456 U.S. at 163), and would effectively afford the "extravagant protection" that the Court has instructed Rule 52(b) was never intended to afford, id. at 16 (quoting Henderson v. Kibbe, 431 U.S. 145, 154 n.12 (1977)).

Indeed, perhaps recognizing the threat to the contemporaneous objection rule that would otherwise exist, we believe the Court in Olano left at least an implication that review would not be available in the special case. The final sentence of the above-quoted paragraph from Olano reads that "[a]t a minimum" an error must be clear at the time of appeal if the court of appeals is to have authority to review the error. The introductory adverbial phrase "[a]t a minimum" conveys that something more than obviousness at the time of appeal might also be required before an appellate court may review an error to which no objection was made at trial. Almost certainly, the "something more" is a reference to the possibility (as to which the Court declined to comment in the immediately preceding sentence) that the error might also have to have been clear at the time of trial.

The implication against review in the special case is also apparent from the fact that the final sentence of the paragraph (like the entire discussion at this point in the opinion) is an articulation of an affirmative limitation upon, not an affirmative grant of, authority to review errors as to which no objections were made at trial. The sentence reads that, at a minimum, a court cannot review an error unless the error is clear at the time of appeal; the sentence does not read that, at a minimum, a court can review an error if it is clear at the time of appeal. Thus the implication that more errors might be unreviewable than just those not plain on appeal, rather than that more errors might be reviewable than just those plain on appeal. In other words, we believe the Olano paragraph is best understood as if it read to this effect:

9

The second limitation on appellate authority under Rule 52(b) is that the error be "plain." "Plain" is synonymous with "clear" or, equivalently, "obvious." At a minimum, the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.[It may be that the appellate court cannot correct an error unless the error was also clear at the time of trial. But "[w]e need not consider" that question, that is, whether review is authorized "where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified."]

2.

It should be apparent that as we understand the Olano special case, it does not include a claim such as that raised by David. At the time of David's trial, the caselaw was clear (although as we now know, wrong) that materiality under section 1001 was to be determined by the court as a matter of law. Our circuit, as well as every other circuit that had considered the issue at that time, except the Ninth, had so held. See United States v. Gaudin, 28 F.3d 943, 955 (9th Cir. 1994) (en banc) (Kozinski, J., dissenting) (collecting cases), aff'd, 115 S. Ct. 2310 (1995). Supreme Court caselaw itself even suggested, if not compelled, that materiality should be decided as a matter of law. As the Court explained in Gaudin, it could not hold that materiality must be submitted to the jury while still "adhering to the reasoning and the holding" of Sinclair v. United States , 279 U.S. 263 (1929), which it proceeded to "repudiate" in full. Gaudin , 115 S. Ct. at 2318.**7** Thus,

_____

**7** In addition to the fact that virtually every circuit had held that materiality was to be decided by the court and that Supreme Court caselaw suggested the same, the Court in Kungys v. United States, 485 U.S. 759 (1988), in holding that materiality under 8 U.S.C.§ 1451 is to be determined by a judge as a matter of law, had relied on a Sixth Circuit case, United States v. Abadi, 706 F.2d 178, 180 (6th Cir.), cert. denied, 464 U.S. 821 (1983), which had held that materiality in a section 1001 prosecution is to be determined by the court as a matter of law. The Court's citation to Abadi was so significant that the Tenth Circuit was forced to reconsider whether materiality under section 1001 was a question of law to be decided by the judge and consequently overruled its prior cases which had held that materiality was a question for the jury. See United States v. Daily, 921 F.2d 994, 1004-05 (10th Cir. 1990), cert. denied,502 U.S. 952 (1991).

10

the error (or law) at the time of David's trial was by no means unclear, nor was the law subsequently clarified.

3.

That David's claim may not have been within the contemplation of the Court when it constructed the Olano passage, however, is not, we think, ultimately dispositive of whether we may review that claim under Rule 52(b), because we are convinced that, had the Court considered the circumstance before us, it would have found this circumstance (in contrast to the special case) to be one in which appellate review should be authorized, for the very same reasons that it suggested there might well not be review in the special case.

Allowing Rule 52(b) review where an objection at trial would have been baseless in light of then-existing caselaw, unlike allowing review where the error was merely "unclear" at the time of trial, furthers the substantial interest in the orderly administration of justice that underlies the contemporaneous objection rule. As the Court has often stated, one of the fundamental purposes of the contemporaneous objection rule is to protect judicial resources, in particular by ensuring that the trial courts will have an opportunity to avoid errors that might otherwise necessitate time-consuming retrial. See Wainwright, 433 U.S. at 90; Estelle v. Williams, 425 U.S. 501, 508 n.3 (1976). Requiring objection at trial in the face of established precedent to the contrary would result in defendants raising frivolous objections simply to ensure that they would receive on appeal the benefit of any later reversals of precedent -- the very kind of waste of judicial resources that the contemporaneous objection rule was intended to discourage. At the same time, allowing appellate review where an objection at trial would have been insupportable in no way frustrates the second objective of the contemporaneous objection rule of preventing counsel from "sandbagging" the courts by withholding a valid objection from the trial court in order to obtain a new trial when the error is recognized on appeal, because an objection at trial would unquestionably have been overruled in any event. In fact, for similar reasons to those which counsel allowing review where an objection at trial would have been pointless, the Supreme Court has recognized the possible value of allowing previously implausible claims to be raised in collateral habeas proceedings, so that counsel will not proceed to raise in state

11

court proceedings "any and all remotely plausible constitutional claims that could, some day, gain recognition." <u>Reed</u> v. <u>Ross</u>, 468 U.S. 1, 16 (1984).

Recognition of appellate review authority where clearly established law has been reversed also avoids what would otherwise be the anomaly that a significant set of errors -- including the error in the instant case -- would be cognizable on <u>habeas</u> review but not cognizable on direct review, even though the burden of justifying federal <u>habeas</u> relief is "significantly higher" than the showing necessary to establish "plain error" on direct appeal. <u>United States</u> v. <u>Frady</u>, 456 U.S. 152, 163-66 (1982); <u>see also Engle</u> v. <u>Isaac</u>, 456 U.S. 107, 134-35 (1982); <u>Henderson</u> v. <u>Kibbe</u>, 431 U.S. 145, 154 (1977). For, as the Court has held, a <u>habeas</u> petitioner can establish "cause" for his failure to raise a constitutional claim in accordance with state procedures (<u>i.e.</u>, in accordance with the contemporaneous objection rule), and thus raise the claim collaterally where, as here, the Supreme Court overrules its own precedent or reverses "longstanding and widespread practice to which th[e] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." <u>Reed</u>, 468 U.S. at 17 (internal quotation marks omitted); <u>compare Engle</u>, 456 U.S. at 130 (futility cannot constitute cause).**8**  Indeed, the Court's holding that such a claim could be raised even on <u>habeas</u> rested in part on the very same reasoning that underlies our decision that plain error review should be available in like circumstances, namely, that in such a circumstance there will "almost certainly" have been no reasonable basis upon which a litigant could have raised an objection at trial or on direct appeal. <u>Reed</u>, 468 U.S. at 17.

Accordingly, we hold that, unlike in the special case as literally described in <u>Olano</u>, both the purposes of the contemporaneous objection rule and considerations of sound judicial administration counsel in favor of plain error review where an objection at trial would have been indefensible because of existing law, but a supervening decision

_____

**8 <u>Teague</u>** v. <u>Lane</u>, 489 U.S. 288 (1989), of course, would not present an independent bar to raising the claim in a writ of <u>habeas corpus</u>, since the "new rule" would be announced while the case was pending on direct appeal, and thus before the conviction became final.

prior to appeal reverses that well-settled law, rendering defendant's claim clearly meritorious.

Although we do so on somewhat different grounds, we join our sister circuits in recognizing appellate review authority in this circumstance. Five circuits have stated that, regardless of the law at the time of trial, an appellate court may review an error under Rule 52(b) if the error is clear on appeal. See Ross, 1996 WL 41564, at *8 ("A `plain' error is one that is clear and uncontroverted at the time of appeal."); United States v. Kramer , 73 F.3d 1067, 1074 n.16 (11th Cir. 1996) (same); Keys, 67 F.3d at 810 ("The error is plain, for purposes of correctability, because it became plain pending review."); Viola, 35 F.3d at 42 (same); Retos, 25 F.3d at 1230 (same).**9** The District of Columbia Circuit has held that an error must be plain at the time of trial in order for an appellate court to correct the error under Rule 52(b), see United States v. Merlos , 8 F.3d 48, 51 (D.C. Cir. 1993), cert. denied, 114 S. Ct. 1635 (1994); see also United States v. Calverley, 37 F.3d 160, 162-63 (5th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1266 (1995),**10** but that circuit has adopted a "supervening-decision doctrine," which allows a court, in a circumstance such as that before us, to "consider issues not raised at trial

_____

**9** Because each of these courts addressed only the circumstance where the law at the time of trial was uniformly against the defendant's claim, it is unclear, despite their unequivocal language that the clarity of the error at the time of trial is irrelevant, whether these courts would actually recognize appellate review authority in the circumstance of the special case as literally described by the Court in Olano. To our knowledge, no court has actually held such an error to have been plain.

**10** The District of Columbia Circuit seemingly rests its holding that the error must have been plain at the time of trial upon the assumption that the final sentence from the Olano passage reads that "[a]t a minimum, the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law at the time of trial." See, e.g., Merlos, 8 F.3d at 51 ("The second prong of Olano's test is not satisfied unless the instruction given was plainly erroneous under current law at the time of trial."); see also Calverley, 37 F.3d at 162-63 (same). The underscored language "at the time of trial," however, does not appear in the sentence from Olano. As we explain supra at 8-9, 11-12, absent the superimposed language, it would seem the final sentence can only refer to the law at the time of appeal.

13

where a supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless," United States v. Washington, 12 F.3d 1128, 1139 (D.C. Cir.), cert. denied, 115 S. Ct. 98 (1994); see also United States v. Byers, 740 F.2d 1104, 1115 n.11 (D.C. Cir. 1984) (en banc) (Scalia, J., writing for a plurality); cf. United States v. Weiner, 3 F.3d 17, 24 n.5 (1st Cir. 1993) ("Arguably, . . . no plain error requirement [should be] imposed, where the Supreme Court's ruling comes out of the blue and could not have been anticipated.").**11**

4.

Because any objection to the materiality instruction at David's trial most assuredly would have been for naught, and because, as discussed

_____

**11** The District of Columbia Circuit's rationale for resorting to the supervening-decision doctrine is much the same as our rationale for holding that the error in this case is cognizable under Rule 52(b). As that court explained,

> [t]he supervening-decision doctrine reflects the principle that it would be unfair, and even contrary to the efficient administration of justice, to expect a defendant to object at trial where existing law appears so clear as to foreclose any possibility of success. Unless the appellate court reaches out on its own to consider the effect of a supervening decision in such a situation, the defendant, through no fault of her own, would not receive the benefit of the change in law.

Washington, 12 F.3d at 1139. Indeed, the distinction between reliance upon a supervening-decision doctrine and Rule 52(b)'s strict requirements may itself be merely a pedantic one, because the remaining Olano factors would likely be considered under the "supervening-decision doctrine" in any event. Cf. Byers, 740 F.2d at 1133 (Robinson, C.J., concurring) (noting that "factors central to plain-error deliberations should also figure prominently in the" supervening-decision doctrine). We believe, however, that reliance upon the "supervening-decision doctrine" in this context may well be foreclosed by Olano's injunction that an appellate court may not notice an error except under Rule 52(b) (or some other express provision of law). See Olano, 113 S. Ct. at 1777; cf. Viola, 35 F.3d at 42 ("The better view is that Rule 52(b) is the sole source of our authority to correct errors not preserved by objection.").

in Part II.A, <u>supra</u> at 5, it is obvious error today not to submit the question of materiality to the jury in a false statements prosecution, <u>see</u> <u>Gaudin</u>, 115 S. Ct. at 2320, David has satisfied the requirement of Rule 52(b) that his alleged error be "plain."

C.

Having determined that the district court's instruction constituted "error" and that the error was "plain," we turn to <u>Olano</u>'s third inquiry of whether the error "affect[ed] substantial rights." As the Court in <u>Olano</u> explained, the phrase "affecting substantial rights" "in most cases . . . means that the error [was] prejudicial." 113 S. Ct. at 1778. But, as the Court went on to recognize, "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome." <u>Id</u>. We believe that <u>Sullivan</u> v. <u>Louisiana</u>, 113 S. Ct. 2078, 2082 (1993), and recent Fourth Circuit precedent, compel the conclusion that the failure to instruct on an element of the crime, where the jury never made the constitutionally required findings, is within that "special category" of forfeited errors, and satisfies <u>Olano</u>'s third prong.

In <u>United States</u> v. <u>Johnson</u>, 71 F.3d 139, 144 (4th Cir. 1995), we held, in reliance upon <u>Sullivan</u>, that the failure to instruct on an element of the crime, where that element cannot be inferred from the other elements actually found by the jury, is an error not susceptible to harmless error analysis. <u>See also United States</u> v. <u>Gaudin</u>, 28 F.3d 943, 951 (9th Cir. 1994) (<u>en banc</u>), <u>aff'd on other grounds</u>, 115 S. Ct. 2310 (1995); <u>cf</u>. <u>Rose</u> v. <u>Clark</u>, 478 U.S. 570, 578 (1986) ("[H]armless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury."). Whether an error which is not susceptible to harmless error analysis is also exempt from the showing of prejudice required to satisfy the third prong of <u>Olano</u> has not been directly addressed by the Supreme Court. <u>See Olano</u>, 113 S. Ct. at 1778; <u>see also United States</u> v. <u>Floresca</u>, 38 F.3d 706, 723 (4th Cir. 1994) (<u>en banc</u>) (Russell, J., dissenting). However, we held in <u>Floresca</u> that such an error necessarily "affect[s] substantial rights," satisfying the third prong of <u>Olano</u>. <u>See</u> <u>Floresca</u>, 38 F.3d at 713. As we explained,

> [t]hat a constructive amendment always "affects substantial rights" is also clear by reading the plain language of

15

Rule 52 in light of <u>Stirone</u>. Rule 52(a) squarely defines harmless error as error that does <u>not</u> affect substantial rights. Because the <u>Stirone</u> Court held that the error occasioned by constructive amendments can <u>never</u> be harmless . . . it follows that such errors <u>must</u> affect substantial rights.

<u>Id</u>. (footnote omitted); <u>see also Washington</u>, 12 F.3d at 1138 ("Because the prejudice inquiry is normally the same under the plain error standard as under the harmless error standard, under <u>Sullivan</u>, a constitutionally deficient reasonable doubt instruction is presumptively prejudicial."); <u>United States</u> v. <u>Birbal</u>, 62 F.3d 456, 461 (2d Cir. 1995) (similar analysis); <u>Merlos</u>, 8 F.3d at 50-51 (similar analysis); <u>United States</u> v. <u>Colon-Pagan</u>, 1 F.3d 80, 81-82 (1st Cir. 1993) (Breyer, C.J.) (similar analysis). David, therefore, has satisfied <u>Olano</u>'s third prong, as well. <u>See United States</u> v. <u>Rogers</u>, 18 F.3d 265, 268 (4th Cir. 1994) (holding "that th[e] ["failure to instruct on the defendant's knowledge of the illegality of his own conduct,"] a required element of the crime[,] is an error that affects substantial rights").

D.

Even when all three of <u>Olano</u>'s Rule 52(b) requirements have been satisfied, the courts of appeals still have discretion whether to notice an error. <u>See Olano</u>, 113 S. Ct. at 1778. Generally, we exercise our discretion "`"in those circumstances in which a miscarriage of justice would otherwise result,"'" <u>id</u>. at 1779 (quoting <u>Young</u>, 470 U.S. at 15 (quoting <u>Frady</u>, 456 U.S. at 163 n.14)), that is, in the case of actual innocence of the defendant, or, where, irrespective of the defendant's guilt or innocence, the plain error "`seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,'" <u>id</u>. (quoting <u>Atkinson</u>, 297 U.S. at 160).

Notwithstanding that so-called structural errors are generally thought not to be subject to harmless error analysis, we are reluctant to adopt a <u>per se</u> rule that every error as to which harmless error analysis need not be conducted <u>must</u> be noticed as plain error. <u>See generally Sullivan</u>, 113 S. Ct. at 2080-83 (analyzing whether an error "affect[ed] substantial rights," <u>not</u> whether a court has discretion to notice a plain error); <u>Rose</u>, 478 U.S. at 577-78 (same); <u>Arizona</u> v.

16

Fulminante, 499 U.S. 279, 306-12 (1991) (same). The Supreme Court specifically rejected a "per se approach to plain-error review" in Young, observing that such an approach is "flawed." 470 U.S. at 16 n.14. Olano itself noted that "a plain error affecting substantial rights does not, without more, [establish that the error"seriously affect[ed] the fairness, integrity or public reputation of[the] judicial proceedings," Atkinson, 297 U.S. at 160], for otherwise the discretion afforded by Rule 52(b) would be illusory." Olano, 113 S. Ct. at 1779. And as the Ninth Circuit has observed, "even if error is `structural,' and even if `structural error' is presumed to affect substantial rights for purposes of the third prerequisite to correctability, a Court of Appeals nevertheless should not reverse because of structural error not raised at trial, unless the error `seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Keys, 67 F.3d at 811; see also United States v. Lopez , 71 F.3d 954, 960 (1st Cir. 1995) ("In all events, our best guess is that the Supreme Court would regard an omitted element reversible error per se if there were a timely objection -- although not automatically`plain error' if no objection occurred . . . ."); Ross, 1996 WL 41564, at *9 (similar analysis); Marder, 48 F.3d at 574-75 (similar analysis); United States v. Xavier, 2 F.3d 1281, 1287 (3d Cir. 1993) (similar analysis). But see Birbal, 62 F.3d at 461; Colon-Pagan, 1 F.3d at 82. It seems to us, as apparently it did to the Court in Olano, that only by examining the particulars of each case can the "careful balancing" reflected in the plain error rule be preserved. See Frady, 456 U.S. at 163; see also Young, 470 U.S. at 16 ("Especially when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record.").

In this particular case, we are convinced that notice of the plain error is warranted. First, there is no evidence in the record as to whether the district court determined that materiality had been proven beyond a reasonable doubt. Second, even assuming that the district court did find David's false statement material under the correct burden of proof, a jury could conceivably have concluded, as David maintained at trial and continues to maintain on appeal, that materiality was not ultimately proven, from the fact that David would have been allowed to continue as a firearms dealer even had he responded truthfully to the indictment question (albeit under a "letter of operation" rather than a renewed license, see J.A. at 162-63). Finally,

17

David is charged with committing a crime against the government, and, as the Supreme Court emphasized in Gaudin , "the power of the jury . . . is most important [precisely when it is] a prosecution not for harming another individual, but for offending against the government itself." 115 S. Ct. at 2316. These factors, together with the fundamental nature of the error, leave us with little doubt that this is the kind of case in which our limited discretion under Rule 52(b) is appropriately exercised so as to preserve the fairness, integrity and reputation of the judicial process.

David's conviction is, accordingly, vacated, and the case is hereby remanded for a new trial.

VACATED AND REMANDED

ERVIN, Circuit Judge, concurring specially:

I am in complete agreement with the result reached by my colleagues and with the rationale given for their legal conclusions.

I write separately only to indicate that I do not necessarily subscribe to the statements and reasoning relating to the situation described as the "special case" in Part II-B, Sections 1 and 2 of the opinion (slip opinion pp. 6-11). I have the same concerns about much of what is written about Circumstances A), B), C) and D). It is my view that the opinion goes substantially beyond what is required to enable us to decide this particular case and I believe that we should limit our decision to the issues that resolve the legal questions before us. Other issues are best left for another day.

It is not my premise that the present opinion undertakes to create precedent with reference to the Olano "special case" situation or to any of the other issues discussed which are not essential to our holding. In fact, a fair reading indicates the opposite. I simply prefer a less expansive discussion of the case before us.

18