**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                 No. 95-5098

JACOB EWESI ROCKSON,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                                                                   No. 95-5116

JOSEPH ANKOMA DADZIE, a/k/a Kofi
Dadzie,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the District Court of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-94-28-L)

Argued: October 30, 1996

Decided: December 24, 1996

Before WILLIAMS and MICHAEL, Circuit Judges, and
DOUMAR, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Alan Royce Lee Bussard, Towson, Maryland, for Appellant Rockson; Robert W. Mance, III, MUNDY, HOLT & MANCE, Washington, D.C., for Appellant Dadzie. Thomas Michael DiBiagio, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Joseph Dadzie and Jacob Rockson were convicted by a jury of conspiracy to launder monetary instruments, see 18 U.S.C.A. § 1956(h) (West Supp. 1996),**1** and conspiracy to fail to file currency transaction reports, see 31 U.S.C.A. §§ 5322 and 5324 (West Supp. 1996). In addition, Dadzie was convicted of money laundering. See 18 U.S.C.A. § 1956(a)(3) (West Supp. 1996). Dadzie was sentenced to 121 months imprisonment and Rockson was sentenced to 87 months imprisonment.

Dadzie and Rockson now appeal their convictions. They argue that the district court improperly directed a verdict for the Government by conclusively instructing the jury that their business, First African Forex Bureau, was a financial institution. They also challenge the

_____

**1** Dadzie and Rockson were charged with violating 18 U.S.C.A. § 1956(g). However, because Congress accidently enacted two subsections (g), the subsection covering conspiracy has been redesignated as subsection (h). See Act of Sept. 13, 1994, Pub. L. No. 103-322, § 330019(a)(2), 108 Stat. 2149; Act of Sept. 23, 1994, Pub. L. No. 103-325, § 413(c)(1)(G), 108 Stat. 2255.

2

introduction into evidence of a taped telephone conversation. Finally, they argue that the evidence was insufficient to sustain their convictions for conspiracy to launder monetary instruments.

Dadzie and Rockson also challenge their sentences. Both argue that the district court erroneously increased their offense levels three points for knowingly laundering drug money. See United States Sentencing Commission, Guidelines Manual, § 2S1.1(b)(1) (Nov. 1995). In addition, Dadzie contends that the district court erred in finding that he laundered more than $6,000,000, thereby increasing his offense level an additional eight points. See U.S.S.G. § 2S1.1(b)(2)(I). Similarly, Rockson contends that the district court erred in finding that he laundered more than $2,000,000, thereby increasing his offense level an additional six points. See U.S.S.G. § 2S1.1(b)(2)(G). Finding no error, we affirm Dadzie's and Rockson's convictions and sentences.

I.

First African Forex Bureau (FAFB), a money transmittal business, was headquartered in Hyattsville, Maryland, with branch offices in Accra, Ghana; Chicago, Illinois; and Irvington, New Jersey. Dadzie directed the FAFB operation from the Hyattsville office. Rockson, along with Kyaku Boakye, managed the FAFB branch office in New Jersey.

An investigation into money laundering at FAFB was initiated after law enforcement officers stopped Ossman Ali for speeding. A search of Ali's car led to the seizure of $66,625 in cash. Ali claimed that the $66,625, which he believed to be drug money, was only a portion of the money he delivered on a regular basis to Rockson, FAFB's agent in New Jersey. According to Ali, Rockson then transported the money from New Jersey to Dadzie in Hyattsville. On the night that Ali was pulled over, he had missed his scheduled meeting with Rockson and, therefore, had to drive to Maryland to deliver the money to Dadzie personally.

In addition to delivering money to Rockson, Ali called Dadzie on a daily basis to report that day's receipts. Ali claims that, during one conversation, he expressed to Dadzie his concern that the large

3

amounts of cash were drug proceeds. According to Ali, Dadzie was not concerned about the money's origin.

Between January of 1990 and June of 1993, over $31,193,587, including $11,345,495 in cash, was deposited into accounts associated with FAFB. Although a large number of the cash deposits exceeded $10,000, FAFB never filed a currency transaction report. In fact, the Government produced evidence that $2,117,595 in cash was structured (i.e., broken down into amounts under $10,000 to avoid the reporting requirements) in the New Jersey office, $3,238,430 in cash was structured in the Chicago office, and $958,320 in cash was structured in the Hyattsville office. During this same period, the FAFB offices in New Jersey and Chicago wired a total of $7,964,000 into FAFB's account in Hyattsville. During a slightly longer period of time -- between June of 1989 and January of 1994-- the Hyattsville office wired nearly $20,000,000 to locations throughout Asia, Europe, and the United States.

The Government also produced evidence that customers of FAFB were engaged in drug trafficking, that the funds they deposited at FAFB were the proceeds of their illegal activity, and that FAFB structured these deposits to avoid the reporting requirements. In addition, evidence was introduced that FAFB customers did not follow regular banking practices or procedures. For example, FAFB customers typically deposited large amounts of cash, frequently made their cash deposits during the night, rarely requested that the money they deposited be counted, and regularly delivered their cash deposits in paper bags.[2]

Between January 1992 and May 1992 the Government conducted an undercover operation involving Dadzie and the Hyattsville FAFB. During this period of time, Dadzie laundered $40,000 for the undercover operation. In one of these transactions, which involved the transfer of $25,000, the undercover informant told Dadzie four times that the money was drug proceeds and was being sent to London to buy heroin. Although Dadzie gave the informant a receipt for the

_____

[2] Boakye testified that one customer came into the New Jersey office with $50,000 in cash stuffed inside a vacuum cleaner. (J.A. at 112-13.)

4

$25,000, Dadzie, in accordance with FAFB's practice, never filed a currency transaction report.

The Government also conducted an undercover operation involving Rockson and the New Jersey FAFB. On one occasion Rockson agreed to wire transfer $12,500 to Hong Kong. Although Rockson gave the informant a receipt for the full $12,500, Rockson told the informant that he intended to structure the deposit into two separate transactions. Even though Rockson was not specifically told that the $12,500 was drug proceeds, Daniel Danso, a drug dealer who was present during the transaction, told the informant that Rockson had knowingly taken drug money from him and his friends on prior occasions.[3] As a part of the same undercover operation, Danso met an undercover Customs Agent in Baltimore, Maryland. During the meeting, the Customs Agent expressed his concern that Rockson might not accept his money if he knew it was drug proceeds. In an effort to assuage his concern, Danso assured the Customs Agent that Rockson didn't care if the money was drug proceeds.

Boakye, Rockson's partner in running FAFB's New Jersey office, testified that pursuant to Dadzie's instructions, he and Rockson structured the large cash transactions by recording them in amounts less than $10,000 and associating each of these smaller amounts with different names. According to Boakye, Dadzie wanted the large cash transactions broken down to avoid filing currency transaction reports and to disguise the transactions. Boakye also testified that Dadzie and Rockson knew that structuring a transaction to avoid filing a currency transaction report was illegal. In addition, Boakye testified that he discussed with Dadzie and Rockson, as early as 1991, his belief that the large cash deposits were drug proceeds.

_____

[3] At trial, the Government introduced evidence that on July 22, 1991, Danso delivered $18,000 in drug proceeds to Dadzie. The funds were recorded as being in amounts less than $10,000 and each of these smaller amounts was associated with a different name. The Government also introduced evidence that between August 5, 1991 and April 14, 1992, Danso delivered $52,000 in drug proceeds to Rockson. The funds were, again, recorded as being in amounts less than $10,000 and each of these smaller amounts was associated with a different name.

In addition to evidence about FAFB's operations, the Government presented expert testimony explaining the nature of money laundering, the typical operation of money launderers, and the relationship between money laundering and drug trafficking. Specifically, the Government presented expert testimony that Dadzie and Rockson's method of structuring large cash transactions to evade reporting requirements was typical of individuals engaged in laundering drug proceeds.

On April 6, 1994 a grand jury returned an indictment charging Dadzie and Rockson with conspiracy to launder monetary instruments (Count I), and with conspiracy to fail to file currency transaction reports (Count III). In addition, Dadzie was charged with laundering of monetary instruments (Count II), and with money laundering (Count IV). A jury trial began on October 17, 1994. On November 2, 1994, the district court dismissed Count II. On November 23, 1994, Dadzie was found guilty on Counts I, III, and IV, and Rockson was found guilty on Counts I and III. Dadzie was sentenced to 121 months imprisonment and Rockson was sentenced to 87 months imprisonment. On appeal, Dadzie and Rockson raise several legal and evidentiary challenges to their convictions and sentences. We address each in turn.

II.

Dadzie and Rockson first argue that the district court erred by conclusively instructing the jury that FAFB was a financial institution within the meaning of 31 U.S.C.A. §§ 5322 and 5324. They contend that, as a result, the instruction prevented the jury from considering an element of the crime charged.[4] Dadzie and Rockson argue that,

_____

[4] Even if the evidence is overwhelming or undisputed, the "Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." United States v. Gaudin, 115 S. Ct. 2310, 2320 (1995). A district court has abused its discretion when it conclusively instructs the jury on an element of the offense. See United States v. Johnson, 71 F.3d 139, 142-43 (4th Cir. 1995). In addition, such error is never harmless. See id. at 143-44 (noting that the harmless error doctrine does not apply when the error consists in directing a verdict against a criminal defendant).

6

because the jury must decide whether the Government proved each element of the crime charged, the district court's instruction improperly directed a verdict for the Government.

After the district court explained that Count III involved a conspiracy to cause a financial institution to fail to file currency transaction reports, the district court instructed the jury, in part, as follows:

> To prove that the defendant under consideration violated this law, the government must prove beyond a reasonable doubt that, one, the defendant knew of the First African Forex Bureau's obligation to file a currency transaction report; two, the defendant on behalf of First African Forex Bureau engaged in a transaction in currency in excess of $10,000 cash; three, the defendant intended to avoid the reporting obligation; and, four, the defendant knew that it was unlawful . . . to cause the First African Forex Bureau to fail to file such a report.

(J.A. at 755.) We review the district court's choice of jury instructions for abuse of discretion. See United States v. Smith, 62 F.3d 641, 646 (4th Cir. 1995). If no objection was made, however, as in this case, an error will be noticed only if the instruction was, in fact, error, the error was plain, and the error affected substantial rights of the defendant. See United States v. Olano, 507 U.S. 725, 731-32 (1993) (citing Fed. R. Crim. P. 52(b)). However, even when the three elements required by Rule 52(b) are shown, we may decline to notice the error. See id. at 735-37. For example, we should not notice a forfeited error unless the error "`seriously affect[s] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." Id. at 736-37 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

Rule 52(b) first requires that an error occur in the proceeding below. Dadzie and Rockson's contentions to the contrary, the district court did not conclusively instruct the jury that FAFB was a financial institution. Cf. United States v. Johnson, 71 F.3d 139, 141-42 (4th Cir. 1995) (finding that the district court erred when it conclusively instructed the jury that the credit union in that case was a financial institution within the meaning of the federal bank robbery statute). At

7

most, the district court erred by failing clearly to instruct the jury that it was required to determine whether FAFB was a financial institution.

Second, it is necessary that the error be plain. An error is plain if it is clear both at the time it occurred and at the time of appeal. See United States v. David, 83 F.3d 638, 62 (4th Cir. 1996). Failing to instruct the jury on an element of the offense was clear error at the time of the trial and remains so on appeal. As a result, assuming that the district court did err in charging the jury, **5** the error is plain. See id. at 646-47.

Third, it is necessary that the error affected Dadzie's and Rockson's substantial rights. We recently recognized that "the failure to instruct on an element of the crime . . . satisfies Olano's third prong." Id. at 647. If the district court did not clearly instruct the jury that it was required to find that FAFB was a financial institution, then the court failed to submit all of the essential elements of §§ 5322 and 5324 to the jury. As a result, assuming that the district court did err in charging the jury, the error affected Dadzie's and Rockson's substantial rights.

Although the three requirements of Rule 52(b) have been established, we decline to notice the error. See Olano, 507 U.S. at 735-36; see also United States v. Cedelle, 89 F.3d 181, 184-86 (4th Cir. 1996) (declining to notice district court's error in failing to instruct the jury on an element of the crime); David, 83 F.3d at 647-48 (declining to adopt a per se rule that failing to instruct the jury on an essential element of the crime must be noticed); United States v. Randazzo, 80 F.3d 623, 632 (1st Cir. 1996) (holding that the failure to instruct the jury on an essential element of the offense was not reversible error

_____

**5** The district court instructed the jury that a business engaged in the wire transfer of funds was a financial institution and that financial institutions are obligated to file currency transaction reports. In addition, the district court instructed the jury that they were required to determine whether the Government proved that Dadzie and Rockson knew FAFB had an obligation to file a currency transaction report. A jury could gather from these instructions that it was required to determine whether FAFB was a financial institution.

because the evidence of guilt was overwhelming). Our "failure to correct the error will not result in a miscarriage of justice or seriously affect the fairness, integrity, or public reputation of the judiciary because, viewing the record as a whole, the proceedings resulted in a fair and reliable determination of [Dadzie's and Rockson's] guilt." Cedelle, 89 F.3d at 186.

The evidence presented at Dadzie and Rockson's trial makes it inconceivable that a jury could determine that FAFB was not a financial institution.[6] Cf. David , 83 F.3d at 648 (noticing plain error of the district court in failing to instruct on an essential element of the crime because a jury conceivably could have determined that the Government had not proven that element). Accordingly, even if the district court failed to instruct the jury that it was required to determine whether FAFB was a financial institution, we decline to notice the error.

III.

Dadzie and Rockson also challenge on two grounds the admissibility of a taped telephone conversation introduced to show that Dadzie and Rockson laundered drug money. In the conversation, Emily Dadzie, Eric Sekyere, and George Asamoah discussed the importation and delivery of heroin. First, Dadzie and Rockson contend that the conversation was hearsay and not admissible under any exception. Second, they argue that the Government did not establish that the Emily Dadzie involved in the phone conversation was the same Emily Dadzie who had deposited money with FAFB. We address their arguments in turn, keeping in mind that a district court's evidentiary rulings are reviewed under the narrow abuse of discretion standard. See United States v. Graely, 840 F.2d 1156, 1162 (4th Cir. 1988).

_____

[6] Financial institution means, among other things, a "currency exchange" or a "licensed sender of money." See 31 U.S.C.A. § 5312(a)(2)(J), (R) (West 1983). According to FAFB's own letterhead it is both a "currency exchange" and "licensed" to send money.

9

A.

Dadzie and Rockson argue that the taped telephone conversation does not fit within any hearsay exception. According to the Federal Rules of Evidence, a "statement is not hearsay if. . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E); see also United States v. Capers, 61 F.3d 1100, 1105 (4th Cir. 1995) (requiring a finding, by a preponderance of the evidence, "(1) that there was a conspiracy involving the declarant and the party against whom the statement is offered and (2) that the declarant's statement was made during the course of and in furtherance of the conspiracy") (citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)), cert. denied, 116 S. Ct. 1830 (1996). Dadzie and Rockson contend that there was neither a showing that Emily Dadzie, Eric Sekyere, or George Asamoah were members of the charged conspiracy, nor a showing that the conversation was part of and in furtherance of the charged conspiracy.

To sustain the conviction for conspiracy to launder monetary instruments, the Government must prove that Dadzie and Rockson structured or attempted to structure a financial transaction involving the proceeds of an unlawful activity. See United States v. Heater, 63 F.3d 311, 318-19 (4th Cir. 1995), cert. denied , 116 S. Ct. 796 (1996). Consequently, a money laundering conspiracy must involve the individuals who generate, through unlawful activity, the money to be laundered. As the taped telephone conversation suggests, George Asamoah was involved in the importation and delivery of heroin. At trial, the Government established that, between August of 1991 and November of 1993, Asamoah deposited $496,450 at the FAFB offices in Hyattsville and Irvington. In addition, the Government introduced evidence that FAFB structured Asamoah's cash deposits to evade the reporting requirements.

As a result, the district court correctly recognized that Asamoah was a member of the money laundering conspiracy. That Asamoah did not know all of his coconspirators, or all of the particulars of the conspiracy, is of no import. See United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc); United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 505 U.S. 1228 (1992). What is

10

important is that Asamoah generated money from the sale of drugs and that Dadzie and Rockson laundered this money for him.

We also find that Asamoah's statement was made during the course of and in furtherance of the conspiracy. If the generator of the drug proceeds is also a member of the money laundering conspiracy, then acts undertaken to generate the drug proceeds are necessarily acts in furtherance of the money laundering conspiracy. See, e.g., United States v. Saccoccia, 58 F.3d 754, 779 (1st Cir. 1995) (noting that "money laundering and narcotics trafficking are symbiotic activities, each of which may require the other in order to continue"), cert. denied, 116 S. Ct. 1322 (1996). Therefore, because the taped telephone conversation falls within the hearsay exception of Rule 801(d)(2)(E), the district court did not abuse its discretion in admitting it into evidence.

B.

Dadzie and Rockson also argue that the taped telephone conversation was inadmissible because the Government did not establish that the Emily Dadzie involved in the telephone conversation was the same Emily Dadzie who deposited money at FAFB.[7] This argument is without merit. To make the taped telephone conversation admissible, the Government need establish only that one participant in the telephone conversation deposited money at FAFB.

Having established that Asamoah deposited money at the FAFB offices in Hyattsville and Irvington, it was not necessary for the Government to establish that the Emily Dadzie involved in the telephone conversation was the same Emily Dadzie who deposited money at FAFB.[8] Accordingly, the district court did not abuse its discretion in admitting the taped telephone conversation into evidence.

_____

[7] On June 8, 1994, the Emily Dadzie involved in the telephone conversation was convicted of importation of heroin and possession of heroin with the intent to distribute.

[8] There is no reason to believe-- and Dadzie and Rockson do not provide one -- that the Emily Dadzie involved in the telephone conversation is not the same Emily Dadzie who deposited money at FAFB. Because we do not need to affirm on alternative grounds, it is simply unnecessary to reach this issue.

IV.

Next, Dadzie and Rockson assert that the evidence was insufficient to sustain their convictions for conspiracy to launder monetary instruments. When assessing the sufficiency of the evidence supporting a criminal conviction on direct review, "the verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." See Glasser v. United States, 315 U.S. 60, 80 (1942).

Conspiracy to launder monetary instruments has four elements. First, the Government must prove that the defendants conducted or attempted to conduct a financial transaction. Second, the transaction must have involved the proceeds of an unlawful activity. Third, the defendants must have had subjective knowledge that the money represented the proceeds of an unlawful activity. Fourth, the defendants must have known that the intent or design of the transaction was either to conceal and disguise the true nature and source of the funds or to avoid the reporting requirements. See United States v. Heater, 63 F.3d 311, 318 (4th Cir. 1995), cert. denied , 116 S. Ct. 796 (1996); United States v. Heaps, 39 F.3d 479, 483 (4th Cir. 1994).

We conclude that there was sufficient evidence for a jury to find that Dadzie and Rockson were conducting financial transactions, as required by the first element of the offense. There was also sufficient evidence to prove the second element of the offense. In fact, Dadzie and Rockson concede that "the government presented overwhelming evidence that customers of First African Forex Bureau were . . . engaged in drug trafficking." (Appellant's Br. at 10.) There was also sufficient evidence to prove that Dadzie and Rockson structured the transactions to avoid the reporting requirements, as required by the fourth element of the offense. The only remaining issue is whether the evidence was sufficient to show that Dadzie and Rockson knew that the transactions involved drug proceeds.

Although there was little direct evidence, as is often the case, we find that the circumstantial evidence, viewed in the light most favorable to the Government, was sufficient to support the jury's finding that Dadzie and Rockson knew that the large cash transactions they structured involved drug proceeds. See Heaps, 39 F.3d at 484 (noting

12

that circumstantial evidence can be used to establish knowledge). For example, Boakye told Dadzie and Rockson, as early as 1991, that he believed the large cash deposits to be drug proceeds. Likewise, Ali told Dadzie that he thought the large cash deposits were drug proceeds. An undercover informant told Dadzie four times that the $25,000 Dadzie structured was drug money, and that it was being sent to London to buy heroin. Danso, a drug dealer, told an undercover agent that Rockson knowingly accepted drug money from him and his friends on numerous occasions.

The Government also produced evidence that customers of FAFB were engaged in drug trafficking, that the funds they deposited at FAFB were the proceeds of their illegal activity, and that these deposits, if over $10,000, were structured by FAFB to avoid the reporting requirements. In addition, the Government presented expert testimony explaining the nature of money laundering, the typical operation of money launderers, and the relationship between money laundering and drug trafficking. Specifically, the Government presented expert testimony that Dadzie and Rockson's method of operation was typical of individuals engaged in laundering drug proceeds.

In any event, evidence of Rockson and Dadzie's deliberate ignorance of the truth was sufficient to create an inference of knowledge.[9] See United States v. Whittington, 26 F.3d 456, 462 (4th Cir. 1994) (noting that a jury may infer knowledge from the defendants' deliberate avoidance of the truth). For example, FAFB customers typically deposited large amounts of cash, they frequently made their cash deposits during the night, they rarely requested that the money they deposited be counted, and they regularly delivered their cash deposits in paper bags. We find that the evidence is sufficient to create an inference of knowledge and illustrates that Dadzie and Rockson must

_____

**9** The district court gave the jury a willful blindness instruction, which "`is appropriate when the defendant asserts a lack of guilty knowledge but the evidence supports an inference of deliberate ignorance.'" See United States v. Abbas, 74 F.3d 506, 513 (4th Cir.) (noting that a willful blindness instruction is proper where evidence presented "supports both actual knowledge on the part of the defendant and deliberate ignorance") (quoting United States v. Gruenberg, 989 F.2d 971, 974 (8th Cir.), cert. denied, 114 S. Ct. 204 (1993)), cert. denied , 116 S. Ct. 1868 (1996).

13

have deliberately avoided the truth. Accordingly, we find Dadzie and Rockson's argument to be without merit.

V.

Dadzie and Rockson also appeal their sentences. Specifically, they argue that the district court incorrectly applied U.S.S.G. § 2S1.1(b), which requires that the base offense level for money laundering be increased for specific offense characteristics. In order to give due deference to a district court's application of the Sentencing Guidelines, we review factual determinations for clear error and legal questions de novo. United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996).

A.

Finding that Dadzie and Rockson knew the funds they laundered were the proceeds of drug trafficking, the district court increased their base offense levels by an additional three points. See U.S.S.G. § 2S1.1(b)(1). Dadzie and Rockson argue that the three point increase is inappropriate because they did not possess the requisite knowledge that the laundered funds were drug proceeds. In light of Dadzie and Rockson's convictions for conspiracy to launder monetary instruments, see 18 U.S.C.A. § 1956(h), we find their argument to be without merit.

In order to prove conspiracy to launder monetary instruments, the Government had to prove, beyond a reasonable doubt, that Dadzie and Rockson knew that the money represented the proceeds of an unlawful activity. See United States v. Heater , 63 F.3d 311, 318 (4th Cir. 1995), cert. denied, 116 S. Ct. 796 (1996). At trial, the Government's entire case focused on establishing that the funds being laundered were drug proceeds. As a result of Dadzie's and Rockson's convictions for conspiracy to launder monetary instruments, the district court was not clearly erroneous in finding that they knew the laundered funds were drug proceeds. Accordingly, the district court did not err in increasing Dadzie and Rockson's offense levels under U.S.S.G. § 2S1.1(b)(1).

B.

The Sentencing Guidelines provide a base offense level of 20 for money laundering. See U.S.S.G. § 2S1.1(a)(2). However, if the value

14

of the laundered funds exceeds $100,000, the Sentencing Guidelines incrementally increase the base offense level according to the amount of money laundered. See U.S.S.G. § 2S1.1(b)(2)(A)-(N). Dadzie and Rockson argue that the district court erroneously calculated the value of the funds they laundered, which, in turn, resulted in an unwarranted increase in their offense levels. The district court's calculation of the amount laundered is a factual determination. At sentencing, a district court need support its findings of fact only by a preponderance of the evidence. See United States v. Morgan, 942 F.2d 243, 246 (4th Cir. 1991). In addition, we will vacate Dadzie and Rockson's sentences and remand for resentencing only if the determination was clearly erroneous. See United States v. Castner, 50 F.3d 1267, 1274 (4th Cir. 1995) (citing United States v. West, 2 F.3d 66, 71 (4th Cir. 1993)).

1.

Finding that Dadzie was responsible for laundering more than $6,000,000, the district court increased his base offense level by eight points. See U.S.S.G. § 2S1.1(b)(2)(I). Dadzie contends that the Government failed to show that $6,000,000 in structured funds were the proceeds of an unlawful activity. Although he was convicted of money laundering, Dadzie notes that the jury was not required to, and did not, specify what percentage of the structured transactions involved drug proceeds.

At sentencing, the Government used FAFB's own business records to establish the amount of money Dadzie laundered. These records revealed that over $6,000,000 in cash was structured by FAFB to avoid filing of currency transaction reports. Of that amount, the Government associated $3,118,456 with individuals who were either convicted of, arrested for, or fugitives from federal or state drug charges. An additional $1,634,045 was deposited by individuals that Boakye identified as drug dealers. Because FAFB used fictitious names in recording the structured transactions, the Government was unable to associate the remaining money to known drug dealers. However, the Government introduced evidence that the remaining money was structured by FAFB in the identical fashion that the money deposited by known drug dealers was structured. Consequently, we hold that, based on the Government's evidence at sentencing, the district court was not

15

clearly erroneous in finding, by a preponderance of the evidence, that more than $6,000,000 in drug proceeds were laundered by FAFB.

Dadzie also argues that even if the $6,000,000 structured at FAFB was the proceeds of an unlawful activity, the Government failed to prove that he knew the money was drug proceeds. However, evidence of deliberate ignorance of the truth is sufficient to create an inference of knowledge. See Whittington, 26 F.3d at 462 (noting that a jury may infer knowledge from the defendants' deliberate avoidance of the truth); see also Part IV (finding that evidence of Dadzie's deliberate ignorance of the truth was sufficient to create an inference of knowledge). As a result, we find that the district court was not clearly erroneous in finding, by a preponderance of the evidence, that Dadzie knew that over $6,000,000 that he laundered was drug proceeds. Accordingly, the district court did not err in increasing Dadzie's offense level by an additional eight points.

2.

Finding that Rockson was responsible for laundering more than $2,000,000, the district court increased his base offense level by six points. See U.S.S.G. § 2S1.1(b)(2)(G). Unlike Dadzie, Rockson does not argue that the Government failed to show that the $2,000,000 in structured funds were the proceeds of an unlawful activity or that he knew the money was drug proceeds. Rather, Rockson argues that because a portion of the $2,000,000 was laundered by Boakye, his sentence should not be increased for the amount Boakye laundered.

The Government concedes that some of the pertinent transactions were carried out by Boakye. Nevertheless, we reject Rockson's argument. Rockson and Boakye co-managed FAFB's New Jersey office. Boakye's transactions were reasonably foreseeable and were within the scope of and in furtherance of the money laundering conspiracy, of which Rockson was a part. As a result, the district court properly attributed to Rockson the transactions structured by Boakye. See United States v. McManus, 23 F.3d 878, 885 (4th Cir. 1994) (attributing to a defendant the reasonably foreseeable acts of other coconspirators). Accordingly, the district court did not err in increasing Rockson's offense level by an additional six points.

16

VI.

For the foregoing reasons, Dadzie and Rockson's convictions and sentences are affirmed.

<u>AFFIRMED</u>

17