35 F.3d 37
 63 USLW 2256
 UNITED STATES of America, Appellee,
v.
Anthony VIOLA, Louis Gazzoli, Michael Formisano, Gaetano
Izzo, also known as Guy Izzo, also known as Guy,
Defendants-Appellants,
Fred Rosen, also known as Rosie; Gerard Petrozelli, also
known as Rosie Petrozelli, also known as Rosie, also known
as Tony; Barry Imhoff, also known as Rosie Imhoff, also
known as Rosie, also known as Number 15 Jr.; Vincent
Sorrentino; Pasquale Moschetta, also known as Patty
Moschetta, also knownas Patty; Max Emmanuel Herman, also
known as Old Man Herman; Thomas Antonelli, Sr.; Carlos
Barona; Hernan Zapata; Jimmy Barona; Paulo Zuluaga, also
known as Paulo Lnu; Carlos Pazmino and Frank Pinto, Defendants.
 Nos. 1257, 1343, 913 and 1344, Docket 93-1272(L), 93-1291,
93-1405, and 93-1583.
 United States Court of Appeals,
Second Circuit.
 Argued July 20, 1994.
Decided July 28, 1994.
Opinion Filed Sept. 13, 1994.
 
 Frank A. Lopez, New York City, for defendant-appellant Louis Gazzoli.
 Joyce C. London, New York City, for defendant-appellant Gaetano Izzo.
 Mark B. Gombiner, New York City (Henriette D. Hoffman, The Legal Aid Soc., Federal Defender Services Unit, of counsel), for defendant-appellant Michael Formisano.
 Christine E. Yaris, New York City, for defendant-appellant Anthony Viola.
 Jason Brown, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Susan Corkery, Eric Friedberg, Asst. U.S. Attys., E.D. of NY, of counsel), for appellee.
 Before: WALKER, McLAUGHLIN, and JACOBS, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Defendants-appellants appeal from judgments of conviction and sentence entered by the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., Judge ), after a jury trial. They were convicted of substantive and conspiracy violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1962(c) and (d), as well as substantive and conspiracy violations arising from their involvement in a drug and stolen property importation and distribution ring. The indictment arose out of an investigation of criminal activity on the Brooklyn, New York waterfront that uncovered a scheme by defendant Anthony Viola to use his influence to facilitate the importation of cocaine and marijuana into the country, and to steal goods from the pier and adjacent warehouses and then sell them. Viola was the proprietor of Blue Chip Coffee, a wholesale coffee company in Brooklyn, and the other appellants were associated with him in different ways. Louis Gazzoli was a warehouseman who conducted business with Viola. Gaetano Izzo was a forklift operator at the Cargo Transport warehousing company, but sometimes worked evenings for Viola. Michael Formisano performed odd jobs for Viola, mostly consisting of light clean-up and maintenance work.
 
 
 2
 As a result of the investigation, a grand jury indicted seventeen individuals, five of whom were joint defendants in the trial in the district court, in a multi-count indictment charging offenses committed from 1984 until July 23, 1991. The government presented extensive evidence at trial in support of the charges, most of which is not relevant to the issues addressed in this opinion. In summary, the indictment charged that Viola and the other defendants assisted narcotics dealers in their efforts to import drugs into the United States through the Brooklyn waterfront. The drug owners would contact Viola who, in turn, would use his influence and access to information to locate the drugs and remove them from the pier in circumvention of United States Customs regulations governing inspection of imported goods. The indictment also alleged that the defendants purloined cargo from the waterfront and then sold the goods on the black market. The government's case consisted of approximately forty witnesses, including three cooperating witnesses, and extensive recorded conversations obtained through over one year's electronic surveillance of Viola's office.
 
 
 3
 All appellants were convicted of violating and conspiring to violate RICO, 18 U.S.C. Sec. 1962(c) and (d). In addition to the RICO counts, the jury convicted Formisano of receiving and possessing property stolen from interstate commerce in violation of 18 U.S.C. Sec. 659, and Izzo of attempting to possess and conspiring to possess marijuana and cocaine, of importing and conspiring to import marijuana, and of being an accessory after the fact to other defendants' crimes.
 
 
 4
 Of the five defendants who stood trial below, one was acquitted and the remaining four--Viola, Izzo, Formisano, and Gazzoli--appealed. We announced our decision in an unpublished order affirming the convictions and sentences of all appellants except Izzo and Formisano, see United States v. Viola, 33 F.3d 50 (2d Cir.1994) (table case), and write to detail our reasoning on two points raised in that order. First, we consider Formisano's claims that he did not participate in the operation or management of the RICO enterprise as is required to support a conviction under 18 U.S.C. Sec. 1962(c), see Reves v. Ernst & Young, --- U.S. ----, ---- - ----, 113 S.Ct. 1163, 1172-73, 122 L.Ed.2d 525 (1993), and that the government did not prove knowledge of the RICO conspiracy sufficient to convict him under Sec. 1962(d). Second, we address Izzo's claim that the district court improperly assessed a two-point offense level enhancement based on his alleged abuse of a position of trust. See U.S.S.G. Sec. 3B1.3 (1992). Consistent with our earlier order, we reverse Formisano's convictions on the two RICO counts and Izzo's sentence enhancement for abuse of a position of trust, and affirm in all other respects.
 
 DISCUSSION
 I. Formisano's RICO Convictions
 
 5
 Formisano challenges his conviction under both the substantive and conspiracy provisions of RICO. With respect to the substantive count under Sec. 1962(c), he claims the district court erroneously instructed the jury that he could be convicted of conducting or participating in the conduct of a RICO enterprise even if he played "no part" in the operation or management of the enterprise. With respect to the conspiracy count under Sec. 1962(d), he challenges the sufficiency of the evidence regarding his knowledge of the existence of the RICO conspiracy.
 
 
 6
 A. The "Conduct" or "Participate" Instruction
 
 1. Application of the Reves standard
 
 7
 Section 1962(c) makes it "unlawful for any person employed by or associated with" a RICO enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Under the previously settled law of this circuit, a defendant did not have to operate or manage a RICO enterprise in order to conduct or participate in the conduct of the enterprise's affairs. See United States v. Scotto, 641 F.2d 47, 52-53 (2d Cir.1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). However, we have recently recognized that the Supreme Court's holding in Reves--that at a minimum the defendant must "have some part in directing [the enterprise's] affairs," --- U.S. at ----, 113 S.Ct. at 1170--is irreconcilable with the relevant portion of our decision in Scotto. See Napoli v. United States, 32 F.3d 31, 34-35 (2d Cir. Aug. 4, 1994).
 
 
 8
 In Reves, the Court adopted an "operation or management" test to gauge whether a defendant had a sufficient connection to the enterprise to warrant imposing liability under Sec. 1962(c). Under the Court's interpretation, simply aiding and abetting a violation is not sufficient to trigger liability even though Sec. 1962(c) punishes those who participate "directly or indirectly" in the enterprise's affairs. This is so because "aiding and abetting liability extends beyond persons who engage, even indirectly, in a proscribed activity; aiding and abetting liability reaches persons who do not engage in the proscribed activity at all, but who give a degree of aid to those who do." Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., --- U.S. ----, ----, 114 S.Ct. 1439, 1447, 128 L.Ed.2d 119 (1994). The Court did not determine "how far Sec. 1962 extends down the ladder of operation," though it indicated that "[a]n enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management." Reves, --- U.S. at ---- & n. 9, 113 S.Ct. at 1173 & n. 9. Some insight into the scope of the operation or management test can be discerned from the Court's intimation that while the operation or management test is more restrictive than aiding and abetting liability, it requires less than "significant" control over the enterprise. See Reves, --- U.S. at ---- & n. 4, 113 S.Ct. at 1170 & n. 4; Stone v. Kirk, 8 F.3d 1079, 1091-92 (6th Cir.1993).
 
 
 9
 We agree with Formisano that the district court's charge did not comport with the requirements of the statute as interpreted in Reves. The district court instructed the jury as follows:
 
 
 10
 The third element that the government must prove is that a defendant conducted or participated in the affairs of the enterprise. The terms conduct and participate in the conduct of an enterprise include the performance of acts, functions or duties that are necessary or helpful to the operation of the enterprise.
 
 
 11
 A person may participate in the conduct of an enterprise even though he had no part in the management or control of the enterprise and no share in any profits. But the participation must be willful and knowing. (emphasis added).
 
 
 12
 Since Reves, it is plain that the simple taking of directions and performance of tasks that are "necessary or helpful" to the enterprise, without more, is insufficient to bring a defendant within the scope of Sec. 1962(c). So also, the district court's instruction that Formisano could be convicted "even though he had no part in the management or control of the enterprise," cannot be reconciled with the Reves requirement that the defendant have "some part in directing the enterprise's affairs." Reves, --- U.S. at ----, 113 S.Ct. at 1170. We therefore find that the instruction given was erroneous under Reves.
 
 2. Plain error review under Rule 52(b)
 
 13
 Formisano did not object to the instruction at trial, and we are thus faced with the issue of whether we can correct this error on appeal. Our "authority to review this erroneous jury instruction is Federal Rule of Criminal Procedure 52(b): 'Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' " United States v. Jones, 21 F.3d 165, 172-73 (7th Cir.1994) (quoting Fed.R.Crim.P. 52(b)); see also United States v. Thai, 29 F.3d 785, 816-17 (2d Cir.1994).
 
 
 14
 As recognized by the Supreme Court, Rule 52(b) places three limits on appellate authority to review errors not preserved at trial. First, there must be "error," or deviation from a legal rule which has not been waived. United States v. Olano, --- U.S. ----, ----, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). Second, the error must be "plain," which at a minimum means "clear under current law." Id. Third, the plain error must, as the text of Rule 52(b) indicates, "affect[ ] substantial rights," which normally requires a showing of prejudice. Id. at ---- - ----, 113 S.Ct. at 1777-78.
 
 
 15
 Generally, in plain error review under Rule 52(b), as contrasted with harmless error review under Rule 52(a), the defendant bears the burden of persuasion as to prejudice. Id. at ----, 113 S.Ct. at 1778. However, the Supreme Court in Olano specifically left open the question which now confronts us: namely, whether under Rule 52(b) special considerations apply "where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." Id. at ----, 113 S.Ct. at 1777; see also id. at ---- - ----, 113 S.Ct. at 1777-78. We think that special considerations do apply. When a supervening decision alters settled law, the three Olano conditions for reviewing plain error under Rule 52(b) still must be met, but with one crucial distinction: the burden of persuasion as to prejudice (or, more precisely, lack of prejudice) is borne by the government, and not the defendant.
 
 
 16
 The reason for this distinction emerges when we contrast the case involving a supervening decision with the ordinary case in which plain error review is invoked. In the ordinary case, an event, such as the issuance of a jury instruction, occurs which is clear error under the law at the time of trial. Because the law is clear, the defendant is on notice of the duty to object. If he fails to object, he not only forfeits his legal right to have the error corrected, but he impedes the judicial process by failing to prompt the trial judge to make timely correction of the error. See id. at ----, 113 S.Ct. at 1776. It is proper to hold a defendant accountable for that failure, and to deter defendants from strategically withholding an objection in order to seek reversal on appeal. The defendant rightly bears the burden of proving prejudice in the ordinary case.
 
 
 17
 The situation is different when a supervening decision alters settled law. A defendant clearly has no duty to object to a jury instruction that is based on firmly established circuit authority. He cannot be said to have "forfeited a right" by not making an objection, since at the time of trial no legal right existed. If we were to penalize defendants for failing to challenge entrenched precedent, we would be insisting upon an omniscience on the part of defendants about the course of the law that we do not have as judges. Imposing such a duty would only encourage frivolous objections and appeals. When the source of plain error is a supervening decision, the defendant has not been derelict in failing to object at trial, and there is thus no cause to shift the burden of proving prejudice to the defendant. In this special context, as in harmless error review under Rule 52(a), the government must show that the error did not affect the defendant's substantial rights.
 
 
 18
 Our approach differs somewhat from that taken by the D.C. Circuit in United States v. Washington, 12 F.3d 1128 (D.C.Cir.1994), petition for cert. filed, (U.S. Apr. 14, 1994) (No. 93-8722). Washington held that "plain error" under Rule 52(b) must be plain under the law at the time of trial, and that a court of appeals makes a separate inquiry under the supervening-decision doctrine. Id. at 1138. However, we agree with the Seventh Circuit that "current law" as used in Olano means the law current at the time of the appeal, not at trial. Jones, 21 F.3d at 172-73 & n. 9 (finding jury instruction to be clear error in light of supervening decision even though the instruction was proper under prior circuit law); see also Thai, 29 F.3d at 816-17. This construction accords with Rule 52(b)'s purpose of restraining courts from reversing for minor deviations from the law, and is buttressed by Olano, which seems to indicate that Rule 52(b) encompasses supervening decisions. See --- U.S. at ----, 113 S.Ct. at 1777. Moreover, the Washington court does not explain the source of its authority to correct an error arising from a supervening decision, if neither Rule 52(a) nor 52(b) provides that authority. The better view is that Rule 52(b) is the sole source of our authority to correct errors not preserved by objection. See Jones, 21 F.3d at 172-73.
 
 
 19
 Finally, we note that the rule that the burden rests on the government to show that plain error in light of a supervening decision did not affect substantial rights applies only when the supervening decision alters a settled rule of law in the circuit. When a point of law has not been addressed or has been inconsistently declared in this circuit, the general plain error rule applies: a defendant has a duty to object to an unfavorable application of the law. His objection forces the district court to determine the matter in the first instance, and preserves the issue for us to resolve on appeal. The defendant's vigilance promotes the advance of the law. As is generally true under Rule 52(b), when the defendant is derelict in his duty, the burden shifts to him to persuade us that the plain error affects his substantial rights. Our precedents even prior to Olano establish that the general plain error rule applies when the supervening decision clarifies unsettled circuit law and objections would not be futile. See United States v. Scarpa, 913 F.2d 993, 1019 (2d Cir.1990); United States v. Tillem, 906 F.2d 814, 825 (2d Cir.1990).
 
 3. Applying Rule 52(b)
 
 20
 Here we do have a supervening Supreme Court decision overturning settled circuit precedent, and the modified plain error rule applies. As discussed above, the first and second conditions for appellate authority under Rule 52(b) are met: the jury instruction was error as a deviation from the current law of Reves, and the error was plain. See Olano, --- U.S. at ----, 113 S.Ct. at 1777. As to the third condition of prejudice, the government is unable to persuade us that the instruction did not affect Formisano's substantial rights. The entirety of the proof with respect to Formisano showed that, acting under Viola's instructions, he transported some stolen beer and lamps to buyers and returned most of the proceeds from the sales to Viola. In contrast with the other defendants, Formisano's participation was limited to these two acts which were undertaken without the exercise of appreciable discretionary authority. Viola was the kingpin of the operation who was contacted by drug owners and who would decide how best to remove the drugs from the docks. Viola and the other defendants also decided to whom to sell stolen goods, and for how much. Formisano, on the other hand, was not consulted in the decision-making process and exercised no discretion in carrying out Viola's orders. Compare Thai, 29 F.3d at 816 (defendant conceived and performed racketeering acts without prior approval). There was no evidence that he was even aware of the broader enterprise. See Part B, infra. While Formisano's acts might have contributed to the success of the RICO enterprise, he simply did not come within the circle of people who operated or managed the enterprise's affairs. Although Reves still attaches liability to those down the "ladder of operation" who nonetheless played some management role, it is plain to us that, since Reves, Sec. 1962(c) liability cannot cover Formisano. Formisano was not on the ladder at all, but rather, as Viola's janitor and handyman, was sweeping up the floor underneath it. Since Formisano was convicted of violating Sec. 1962(c) in the absence of evidence sufficient to bring him within the terms of that provision, he suffered clear prejudice from the erroneous instruction.
 
 
 21
 We conclude that the district court's instruction was plain error. Because the error seriously affected the fairness of his trial, see Olano, --- U.S. at ----, 113 S.Ct. at 1779, we exercise our discretion under Rule 52(b) to reverse his conviction on this count.
 
 B. Section 1962(d)
 
 22
 Reversal of Formisano's substantive RICO conviction because he did not participate in the operation or management of the enterprise does not require automatic reversal of his conviction under RICO's conspiracy provision, 18 U.S.C. Sec. 1962(d). A defendant can be guilty of conspiring to violate a law, even if he is not among the class of persons who could commit the crime directly. See United States v. Quintanilla, 2 F.3d 1469, 1485 (7th Cir.1993); W. Lafave & A. Scott, Criminal Law Sec. 6.5(g)(4), at 564 (2d ed. 1986). The straightforward language of Sec. 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." When read in conjunction with the language of Sec. 1962(c), RICO's conspiracy provision proscribes an agreement "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." See United States v. Neapolitan, 791 F.2d 489, 495 (7th Cir.), cert. denied, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). The RICO conspiracy charge is proven if the defendant "embraced the objective of the alleged conspiracy," and agreed to commit two predicate acts in furtherance thereof. Id. at 499.
 
 
 23
 In this case, there was a conspiracy to conduct the Viola enterprise's affairs through a pattern of racketeering activity, and Formisano committed two crimes that qualify as RICO predicate acts. The narrow issue thus presented is whether the government produced sufficient evidence to convince a jury beyond a reasonable doubt that Formisano knowingly associated with the Viola enterprise by agreeing to commit the predicate acts. See United States v. Rastelli, 870 F.2d 822, 828 (2d Cir.), cert. denied, 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989).
 
 
 24
 We have held that in order to demonstrate a RICO conspirator's knowledge of the RICO conspiracy, it is sufficient for the Government to show "that the defendant know[s] the general nature of the enterprise and know[s] that the enterprise extends beyond his individual role." Id. at 828. This requirement stems from the elementary principle of conspiracy law that a person cannot be convicted of agreeing to participate in a conspiracy if he has no knowledge that the conspiracy even exists. See United States v. Falcone, 311 U.S. 205, 210-11, 61 S.Ct. 204, 207, 85 L.Ed. 128 (1940); United States v. Nusraty, 867 F.2d 759, 763 (2d Cir.1989). The required nexus between the defendant's acts and the RICO conspiracy thus protects the defendant from being found guilty based on incidental or tenuous association with the enterprise and its members. See United States v. Winter, 663 F.2d 1120, 1136 (1st Cir.1981), cert. denied, 460 U.S. 1011, 103 S.Ct. 1249, 1250, 75 L.Ed.2d 479 (1983); United States v. Elliott, 571 F.2d 880, 906-07 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). Nonetheless, it is axiomatic that the proof required to show that a defendant knowingly associated with an existing conspiracy "need not be overwhelming." United States v. Provenzano, 615 F.2d 37, 45 (2d Cir.) (internal quotations omitted), cert. denied, 446 U.S. 953, 100 S.Ct. 2921, 64 L.Ed.2d 810 (1980). Participation in the conspiracy can be shown wholly through circumstantial evidence, and in reviewing the sufficiency of that evidence we will draw all reasonable inferences in the government's favor. United States v. Soto, 716 F.2d 989, 991 (2d Cir.1983).
 
 
 25
 With respect to Formisano, the government's proof fails to support a finding of sufficient knowledge of the RICO conspiracy. The government established at trial that Formisano was employed by Viola to perform menial tasks and that on two occasions Formisano agreed to sell goods for Viola knowing they were stolen. The government asserts that this, coupled with the fact that Formisano was present when Viola ordered another employee to load the stolen goods on a delivery truck, was sufficient to show that Formisano voluntarily associated with the Viola enterprise, and knew the enterprise extended beyond his role. Although this evidence might be sufficient if the government's conclusion was consistent with other circumstances, the evidence contradicts the inference that Formisano was aware of the broader conspiracy.
 
 
 26
 In the wealth of evidence presented at trial to show the existence and scope of the Viola enterprise, Formisano is hardly even mentioned. This absence is telling because the evidence included accomplice testimony from participants in the conspiracy who never mentioned Formisano, much less indicated their familiarity with him. Further, in the numerous surveillance tapes canvassed at length at trial, only a few scant references were made to Formisano, and then only in the context of the two offenses charged against him and not in relation to the broader enterprise. The government's year-long electronic surveillance did not reveal a single instance where Formisano was overheard in conversation with any of the members of the Viola enterprise apart from Viola, his employer at Blue Chip Coffee. While Formisano need not have known each member of the conspiracy to be associated with it, Rastelli, 870 F.2d at 828, the lack of affiliation beyond Viola, while not dispositive, is relevant to whether Formisano actually was aware of the broader enterprise, see id. at 827 (degree of defendant's association with other conspirators and participation in activities that furthered enterprise's affairs relevant to whether defendant had requisite knowledge of RICO conspiracy).
 
 
 27
 The record is devoid of evidence that, apart from the discrete stolen property crimes he committed, Formisano knew what Viola and the other members of the conspiracy were up to. Additionally, there was nothing about the nature of the stolen goods or magnitude of the transactions involving Formisano that logically would lead him to suspect he was part of a larger enterprise, and the government points to no evidence of Formisano's direct knowledge of additional transactions. In sum, we conclude that there was insufficient evidence for a jury to conclude beyond a reasonable doubt that Formisano knew "the general nature of the enterprise and ... that the enterprise extend[ed] beyond his individual role." Rastelli, 870 F.2d at 828. Accordingly, his conviction under Sec. 1962(d) must be reversed.
 
 II. Izzo's Abuse of a Position of Trust
 
 28
 At sentencing, the district court enhanced Izzo's base offense level two points on the ground that he abused a position of trust. See U.S.S.G. Sec. 3B1.3. The enhancement was levied because Izzo, through his position as a forklift operator at Cargo Transport, was able to examine warehouse manifests and identify for Viola which containers might contain drugs Viola was trying to locate. We do not think the enhancement was warranted on the facts of this case.
 
 
 29
 At the time of Izzo's sentencing, as it does now, Sec. 3B1.3 of the Sentencing Guidelines provided for a two offense level increase "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense...." U.S.S.G. Sec. 3B1.3 (1992). The phrase "public or private trust," as the Sentencing Commission clarified in an amendment to the application notes effective after Izzo's sentencing, "refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. Sec. 3B1.3, Application Notes 1 (1993). While we do not think the defendant's relationship to the victim needs to rise to the level of a fiduciary, not every employee occupies a position of trust subject to the enhancement. "[T]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." United States v. Castagnet, 936 F.2d 57, 61-62 (2d Cir.1991) (quoting United States v. Hill, 915 F.2d 502, 506 (9th Cir.1990)).
 
 
 30
 Izzo's position as a forklift operator did not involve a substantial amount of discretionary judgment, and he was not subject to relaxed supervision because of the position. See U.S.S.G. Sec. 3B1.3, comment. (n. 1). Significantly, Izzo was not able to obtain special access to the manifests because he occupied this position. The manifests were kept conspicuously in the office of Cargo Transport's manager, and were accessible by any employee. Moreover, the fact that Izzo's actions were easily detectable, and there were simple objective means to prevent him from gaining access to the documents, demonstrates that his ability to gain such access was not furthered by reason of his position. Izzo may have abused his position as an employee by surreptitiously viewing the manifests and disclosing their contents, but his position as a forklift operator was not a repository of public or private trust within the meaning of Sec. 3B1.3. Accordingly, the two-level enhancement was not justified.
 
 CONCLUSION
 
 31
 Formisano's convictions under 18 U.S.C. Sec. 1962(c) and (d) are reversed, and those counts are dismissed as to him. Izzo's sentence is vacated, and his case remanded for resentencing consistent with this opinion. The judgments are affirmed in all other respects.