**Ventspils NAFTA, Plaintiff,**

v.

**FENIKS INTERNATIONAL HOUSE OF TRADE (U.S.A.) INC., Isaak Novikov, Vladimir Frolov, Jouliya Khamidova and Yury Kachanovsky, Defendants.**

No. CV–95–3992.

United States District Court,
E.D. New York.

July 2, 1996.

Robert F. Fink, Carol M. Fischer, Piper & Marbury, New York City, for plaintiff.

James Alexander Burke, Steven Kimelman, P.C., New York City, for defendants.

### MEMORANDUM and ORDER

GLASSER, District Judge:

#### FACTS

The facts summarized here are from plaintiff's amended complaint. Plaintiff Ventspils Nafta is a corporation organized under the laws of the Republic of Latvia and one of the largest corporations in that Republic. It oversees the movement of commodities in Latvia. Complaint ¶¶ 2, 5.[1] Defendant Feniks International House of Trade is a New York trading corporation with its principal place of business in Brooklyn, New York. Defendant Isaak Novikov is a principal shareholder and chairman of Feniks. Defendant Yury Kachanovsky and Jouliya Khamidova are both principals of Feniks, and residents of New York State. Defendant Frolov, a resident of Latvia, was at the times relevant to the complaint the head of Ventspils Nafta's marketing department. Complaint ¶¶ 6–10.

The complaint alleges on information and belief that in early 1993 defendants Novikov, Kachanovsky, Khamidova, and Frolov conspired to defraud Ventspils Nafta, taking advantage of Ventspils Nafta's inexperience in Western business practices. Complaint ¶ 15. In furtherance of this conspiracy, defendants allegedly committed the following acts:

- In May, 1993, defendants Novikov and Frolov convinced Janis Blazevics, managing director and president of Ventspils Nafta, to authorize Feniks to arrange for Ventspils Nafta to do business in New York and establish a bank account in New York. Complaint ¶ 16.

- In May, 1993, defendants Novikov and Frolov convinced Blazevics to authorize Feniks to open a bank account for Ventspils Nafta at the Brighton Beach branch of the Chase Manhattan Bank.

- In June, 1993, defendants Novikov, Kachanovsky, Khamidova and Feniks submitted a false "Application for Authority" on behalf of Ventspils Nafta to the Office of the Secretary of the State of New York. This Application contained forged signatures and an improper seal. Complaint ¶ 24.

- In June, 1993, defendants Novikov, Kachanovsky, Khamidova and Feniks arranged to have an account opened in Ventspils Nafta–NY's name in the Brighton Beach branch of

1. All references to the complaint are to the amended complaint.

Chase Manhattan Bank. Complaint ¶ 25. In connection with the opening of this account, defendants submitted false documents to Chase, namely documents improperly designating defendant Khamidova as an officer of Ventspils Nafta–NY; incorrect information purportedly from an accounting firm; and a signature card which falsely designated defendant Khamidova as the authorized signatory on the account. Complaint ¶¶ 26–28.

● Between September 1993 and December 1993, plaintiff, acting on misrepresentations made by defendants Novikov and Frolov, instructed its customers to deposit amounts totaling over $2.5 million into the Chase account. Some of these deposits were made by Ventspils Nafta's customers acting on Frolov's instructions without Blazevics' authorization. Complaint ¶ 30.

● Between October, 1993 and March, 1994, Ventspils Nafta's money was withdrawn from the Chase account either by wire transfer or debit memo payment or by certified check pursuant to the instructions of defendants Kachanovsky and Khamidova. Many of these transfers were to Feniks' bank accounts at Chemical Bank or in Finland. Complaint ¶¶ 31–40.

● Between December, 1993, and April, 1994, defendant Novikov prepared and faxed to plaintiff false bank account reports which deliberately failed to reflect any of the transactions by defendants that had not been authorized by plaintiff. Complaint ¶¶ 41–45.

● In August, 1994, upon being accused and confronted by Blazevics, defendant Novikov acknowledged that Feniks had taken money from the Ventspils Nafta bank account. At that time, defendant Novikov told Blazevics that if Blazevics would enter into a backdated agreement with Feniks, Feniks would repay the money. Novikov threatened Blazevics with physical harm if he would refuse to sign such an agreement. Complaint ¶¶ 48–49. Blazevics signed the agreement, but the money has not been repaid. Complaint ¶¶ 50–53.

Plaintiff's Second Claim for Relief states that defendants Novikov, Kachanovsky, Khamidova, Feniks and Frolov violated the civil RICO statute, 18 U.S.C. § 1962(b), by acquiring in, or maintaining an interest in or control of, an enterprise, namely Ventspils Nafta, through a pattern of racketeering activity. Complaint ¶ 64. Plaintiff also claims that defendants' conduct of the affairs of Feniks through a pattern of racketeering activity constituted a separate violation of 18 U.S.C. § 1962(c). Complaint ¶ 65. Plaintiff's First Claim for Relief states that defendants conspired to violate § 1962(b) and § 1962(c) in violation of § 1962(d). Plaintiff's Third Claim for Relief is for common law fraud.

Defendants have moved the Court to dismiss plaintiff's RICO claims on the ground that they fail to state a cause of action pursuant to Fed.R.Civ.P. 12(b)(6).[2] In addition, defendants have moved to dismiss all claims against Kachanovsky and Khamidova for failure to plead fraud with respect to these defendants with the requisite particularity pursuant to Fed.R.Civ.P. 9(b).

### *DISCUSSION*

For purposes of this decision, the court takes the facts alleged in plaintiff's complaint as true. *See GICC Capital Corp. v. Technology Finance Group,* 67 F.3d 463, 465 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). All reasonable inferences to be drawn from the complaint are drawn in favor of the plaintiff. *Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989).

*RICO*

Under the RICO statute, 18 U.S.C. § 1961 *et seq.,* it is unlawful "for any person through a *pattern of racketeering activity* or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any *interest in* or *control of* any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b) (emphasis added). It is also unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to *conduct or participate,* directly

---

**2.** Defendant Frolov has not answered the complaint or otherwise appeared in this action.

or indirectly, in the conduct of such enterprise's affairs through a *pattern of racketeering activity* or collection of unlawful debt." 18 U.S.C. § 1962(c) (emphasis added). A conspiracy to violate the substantive RICO provisions constitutes a separate violation of 18 U.S.C. § 1962(d).

### Pattern of Racketeering

Defendants argue that plaintiff's RICO claims must be dismissed because the complaint fails to set forth facts sufficient to demonstrate a "pattern of racketeering," an essential component of any RICO violation. A "pattern of racketeering activity" is defined under the RICO statute as at least two predicate acts occurring within ten years of each other. 18 U.S.C. § 1961(5). That the facts as alleged by plaintiff establish that defendants committed at least two predicate acts is not in dispute. However, "proof of two acts of racketeering, without more, does not establish a pattern." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (quoting 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan)). Allegations of isolated or sporadic activity are insufficient; to demonstrate a pattern, the acts involved must threaten the likelihood of continued criminal activity. *H.J.* at 237, 241, 109 S.Ct. at 2899–2902 ("Congress was concerned in RICO with long-term criminal conduct.").

■ Under the judicial gloss upon civil RICO, a pattern of racketeering activity requires at least two predicate acts and a relation between them. In addition, the alleged acts must amount to, or pose a threat of, continued criminal activity. *GICC* at 465. *See H.J.*, 492 U.S. at 241, 109 S.Ct. at 2902 ("What a plaintiff or prosecutor must prove is continuity of racketeering activity or its threat, *simpliciter.*"). There is no dispute here that the alleged predicate acts are "related." However, defendants argue that plaintiff has failed to demonstrate either "closed-ended" continuity or "open-ended" continuity, and that the complaint therefore

fails to establish a pattern of racketeering as required to prove a violation of RICO.

■ To meet the test for closed-ended continuity, a party must prove "a series of related predicates extending over a *substantial* period of time." *H.J.* at 242, 109 S.Ct. at 2902 (emphasis added). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy" the requirement for closed-ended continuity. *Id.* At the hearing on this motion, defendants' counsel argued that the Second Circuit's holding in *GICC Capital Corp. v. Technology Finance Group*, 67 F.3d 463 (2d Cir.1995) precluded a finding of closed-ended continuity in this case because the predicate acts alleged span less than ten months.[3] Defendants' argument represents a misreading of the Second Circuit's decision and cannot be supported by general principles established in numerous cases interpreting the RICO statute. To begin with, the time period relevant in determining whether closed-ended continuity has been established is not rigidly circumscribed by acts which meet the legal definition of "predicate acts." Where the predicate acts are so related that they necessarily occur in a close time proximity, evidence of continuity must be derived from "facts external to those two acts." *United States v. Kaplan*, 886 F.2d 536 (2d Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990). Viewing the relevant time span as encompassing all of defendants' activities related to the fraudulent scheme alleged extends the time span involved from approximately 10 months to 15 months.

Moreover, the argument that a fraudulent scheme which ceased when the plaintiff became aware of the defendants' activities cannot satisfy the test for closed-ended continuity because of its short time span simply makes no sense. If such were the case, it would be to the plaintiff's advantage, perhaps its only route to success in a RICO action, to allow a criminal scheme to continue long past the time it was uncovered. The ramifications of such a holding are clear, and

---

**3.** As interpreted by defendants, the first predicate act alleged by plaintiff is the mailing and filing of a false Application for Authority with the Secre-

tary of State of New York in June 1993. The last predicate act is the transmission of a false bank statement to Ventspils Nafta in June 1994.

*GICC* certainly does not endorse such a result. Rather, a determination of whether the facts demonstrate a threat of ongoing criminal activity must take into account the type of conduct involved and the nature of the racketeering enterprise being alleged. *See GICC* at 466. Thus, courts have found a threat of continuity even where the period spanned by the predicate acts was relatively short, when the facts involved acts of the defendant or enterprise that were inherently unlawful. In determining whether a threat of continuity exists, the court takes into account "factors other than the enterprise itself." *Kaplan* at 543. Such factors may "amplif[y] the full character of the predicate acts and their relationship to the enterprise and thus provide[ ] sufficient evidence that those predicate acts entailed a threat of continuity sufficient to support a finding of a RICO pattern." *Id.*

■ Although a single scheme that is "inherently terminable," *see GICC* at 466, or "acts that focus on a clearly defined, discrete, and finite goal," *Vicom, Inc. v. Harbridge Merchant Svcs., Inc.,* 20 F.3d 771, 783 (7th Cir.1994) (citation omitted) generally cannot establish the threat of ongoing continuity, such a threat does exist where the facts indicate that the defendant was prepared to undertake an extended series of criminal acts that would continue indefinitely. *United States v. O'Connor,* 910 F.2d 1466 (7th Cir. 1990), *cert. denied,* 498 U.S. 1082, 111 S.Ct. 953, 112 L.Ed.2d 1041 (1991). In *United States v. Aulicino,* 44 F.3d 1102 (2d Cir. 1995), the Second Circuit rejected the defendants' argument that because they stopped their kidnaping activities of their own volition after a few weeks or months, their conduct did not pose a threat of ongoing continuity. *Aulicino* at 1113. The court distinguished between a criminal scheme that was abandoned, which it held could pose a threat of continuity, and a "discrete and finite project that came to a natural end," which did not pose such a threat. *Aulicino* at 1114. In *United States v. Busacca,* 936 F.2d 232 (6th Cir.), *cert. denied,* 502 U.S. 985, 112 S.Ct. 595, 116 L.Ed.2d 619 (1991), quoted favorably by the Second Circuit in *Aulicino,* the Sixth Circuit found a violation of RICO in an embezzlement scheme where the alleged predi-

cate acts involved no more than a two month period, because "[t]he manner in which the embezzlements occurred was capable of repetition indefinitely into the future." Thus, where external facts demonstrate a defendant's continuing intent and ability to participate in various ways in the racketeering enterprise, predicate acts which encompass only a short time span may entail a threat of continuing racketeering activity. *Kaplan* at 543.

■ Unlike the fraud involved in *GICC Capital Corp. v. Technology Finance Group,* 67 F.3d 463 (2d Cir.1995), which involved a plan to deprive a single corporation of its assets, and which was of necessity completed when those assets were depleted, the facts of this case provide no indication that defendants' conduct had a natural end point or was "inherently terminable." The case involves a massive fraud perpetrated by sophisticated operators on a large Eastern European corporation unskilled in Western ways of business. The fraudulent scheme conceived of and carried out by defendants included forgeries committed on applications to the Secretary of the State of New York and a premier banking institution, and is not of the genre of an "ordinary commercial case" that should be exempt from the net cast by RICO. *See* Arthur Mathews, *et al.,* 1 Civil RICO Litigation 1–7 (2d ed. 1992). In fact, even after their scheme was uncovered, defendants continued to engage in conduct that perpetuated the fraud. The fact that defendants' fraudulent activities regarding the Ventspils Nafta Chase Manhattan Bank account ceased when defendant Novikov was confronted with Blazevic's knowledge of the plan does not diminish the threat of ongoing criminal activity defendants' conduct posed. The court's comments in *Busacca* are applicable here as well:

An analysis of the threat of continuity cannot be made solely from hindsight. All racketeering activity must necessarily come to an end sometime. The lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption of that activity such as by an arrest, indictment or guilty verdict.

*Busacca* at 238. Defendant's activities, as alleged by plaintiff, pose the type of threat of "long term criminal conduct" that RICO was designed to prevent, and the complaint sufficiently demonstrates a "pattern of racketeering" to establish a violation of RICO.

■ *§ 1962(b): Interest In or Control Of an Enterprise*

Defendants argue that even if the complaint alleges facts sufficient to demonstrate a pattern of racketeering, plaintiff's claim of a violation of 18 U.S.C. § 1962(b) must be dismissed because the complaint fails to allege facts to demonstrate that defendants obtained an "interest in" or "control of" the alleged enterprise, Ventspils Nafta. *See* 18 U.S.C. § 1962(b), *quoted supra*, p. 4. Defendants contend that the only facts which could support a conclusion that they obtained an "interest" in Ventspils Nafta relate to their alleged obtaining possession of funds belonging to that company, and that possession of funds constitutes insufficient grounds for satisfying the legal standard. Defendants Memo. pp. 26–28. Defendants also argue that none of the facts alleged by plaintiff demonstrate that they had "control" of Ventspils Nafta.

While merely obtaining money rightfully belonging to an enterprise is not enough to satisfy the requirement of "interest" under § 1962(b), *see P.M.F. Svcs., Inc. v. Grady*, 681 F.Supp. 549, 556 n. 16 (N.D.Ill.1988), defendants' involvement with the plaintiff in this case went significantly beyond mere possession of funds. Adopting the definition employed by Webster's International Dictionary, the courts have found that "interest in" includes "participation in advantage, profit and responsibility." *United States v. Jacobson*, 691 F.2d 110, 113 (2d Cir.1982) (per curiam) (quoting *United States v. Martino*, 681 F.2d 952, 954 (5th Cir.1982) (en banc)). The facts alleged by plaintiff clearly indicate that the defendants in this case participated in the "advantages and profits" of Ventspils Nafta and thus establish that they possessed an "interest in" the alleged enterprise.

Furthermore, the courts have found the requirements of § 1962(b) to have been met in cases where the defendant's involvement in the enterprise's activities was far less than the involvement of these defendants in Ventspils Nafta. In *United States v. Jacobson*, 691 F.2d 110, 113 (2d Cir.1982) (per curiam), the Second Circuit found that the assignment of a bakery's lease to the defendant was sufficient to justify an inference that defendant had control of the bakery enterprise. *P.M.F. Svcs., Inc. v. Grady*, 681 F.Supp. 549, 556 n. 16 (N.D.Ill.1988), cited by defendants, is in direct conflict with their contention that their activities did not amount to an "interest in" or "control of" Ventspils Nafta. In a footnote in *P.M.F.*, the court quoted with approval the Seventh Circuit's decision in *Sutliff, Inc. v. Donovan Cos., Inc.*, 727 F.2d 648, 653 (7th Cir.1984), where Judge Posner held that the facts that defendants had persuaded plaintiff to sell them goods below cost in return for small cash advances adequately demonstrated defendants' "control" over the enterprise. *See P.M.F.* at 556 n. 16 ("In *Sutliff* the plaintiff enterprise alleged defendants had directly caused plaintiff to enter into many transactions it would otherwise not have. That is 'control' as the term is normally used.") (internal citations omitted). The facts of this case, which establish that the defendants caused Ventspils Nafta "to enter into many transactions it would otherwise not have," are analogous to the facts in *Sutliff* and similarly meet the legal standard of "control." *See also Ikuno v. Yip*, 912 F.2d 306, 310 (9th Cir.1990) (holding that plaintiff had adequately demonstrated control where the facts established that the defendant negotiated a lease for the enterprise corporation, signed its corporate reports in a space designated for officers and directors of the corporation, and held himself out as the company's attorney).

The facts as alleged by plaintiff establish that the defendants, through numerous acts, were able to direct the course of plaintiff's business activities and manipulate its affairs. Under the simple meaning of the words "interest in" and "control of", as well as their commonly accepted legal applications, the complaint demonstrates that defendants' activities enabled them to assert both "interest in" and "control of" Ventspils Nafta.

## § 1962(c): "Conduct or Participate"

■ Defendants argue that plaintiff has not alleged any facts which demonstrate that Kachanovsky and Khamidova played a role in directing the affairs of Feniks, and fail to establish that these defendants were engaged in the "performance of tasks that are 'necessary or helpful' to the enterprise" as required to show a violation of § 1962(c). According to defendants, the facts alleged demonstrate nothing more than that defendants Kachanovsky and Khamidova performed limited tasks at defendant Novikov's direction. *See* Defendants' Memo. pp. 31–32 ("the alleged actions of these individuals were limited to a few routine banking transactions performed at the direction of Isaak Novikov.").

It is true, as defendants contend, that "the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." *United States v. Viola,* 35 F.3d 37, 41 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995). Thus, in *Viola,* the Second Circuit reversed the conviction of the defendant, who performed "light clean-up and maintenance work" for the 'kingpin' of a drug ring, where the evidence at trial demonstrated that the defendant's participation in the enterprise was limited to the performance of two acts which were undertaken "without the exercise of appreciable discretionary authority;" there was also no evidence that the defendant was even aware of the broader racketeering enterprise. *Viola* at 43.

However, while "participation" for purposes of § 1962(c) requires that the defendants have "some part in directing" the affairs of the enterprise, it does not require that they have "primary responsibility for the enterprise's affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 178, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993). The facts of the complaint indicate that the defendants in question took an active role in the fraudulent scheme alleged, submitting false documents to the Secretary of State of New York and Chase Manhattan Bank, making misrepresentations to employees of Chase Manhattan regarding their authorization to act on behalf of Ventspils Nafta, and personally directing fraudulent transfers from the Ventspils Nafta account at Chase Manhattan. Far from being menial employees whose involvement in the alleged enterprise consisted of blindly following their superior's orders, defendants Kachanovsky and Khamidova were active and significant participants in the "operation or management of the enterprise itself." *Reves,* at 184, 113 S.Ct. at 1173. Unlike the defendant in *Viola,* defendants Kachanovsky and Khamidova, who were principals of the alleged enterprise and active in its affairs, would be hard-pressed to argue that they "did not come within the circle of people who operated or managed" Feniks. *Viola* at 43. Defendants certainly have not met the standard required by this motion to dismiss of demonstrating that there is no set of facts under which plaintiff could prove that Kachanovsky and Khamidova "participated" in the conduct of the enterprise, Feniks.

## § 1962(d): Conspiracy

As the Court declines to dismiss plaintiff's claims under §§ 1962(b) and (c), defendants' motion for dismissal of the plaintiff's conspiracy claim must also be denied, insofar as it rests on the argument that plaintiff has not demonstrated a violation of the underlying substantive offenses. However, defendants also argue that the conspiracy claims against defendants Kachanovsky and Khamidova must be dismissed because the "routine banking transactions" these defendants performed fail to provide a basis for inferring an agreement to commit any fraudulent act and the complaint therefore provides no factual basis for a finding that these defendants consciously agreed to defraud Ventspils Nafta. Defendants' Memo. at 37–39.

■ To state a claim for RICO conspiracy, plaintiff must allege that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise. *First City Nat'l Bank v. FDIC,* 730 F.Supp. 501, 509 (E.D.N.Y.1990). A plaintiff must show that defendants were parties to an unlawful agreement or that defendants, understanding the scope of the enterprise, knowingly agreed to further its affairs through the commission of various offenses. *Id.* at 510 (citing cases). The facts alleged by plaintiff would, if proved, establish

that the defendants, including defendants Kachanovsky and Khamidova, entered into an agreement to defraud plaintiff and that each of them committed acts in furtherance of that agreement. The complaint includes allegations that defendant Khamidova signed corporate resolutions as President of Ventspils Nafta–NY, when she was never appointed to that position; that both she and defendant Kachanovsky represented to Chase Manhattan Bank that they were authorized signatories to the Ventspils Nafta bank account, when they were not; and that they engaged in unauthorized transfers of over two million dollars from plaintiff's account to accounts of the corporation of which they were principals. It is difficult to reconcile these facts with defendants' characterization of their activities as nothing more than "routine banking transactions." Rather, the only possible conclusion is that the actions of the defendants "manifest the necessary agreement to commit predicate acts in furtherance of a common design to defraud." *First City Nat'l Bank v. FDIC,* 730 F.Supp. 501, 510 (E.D.N.Y.1991).

The cases cited by defendants in support of their position are inapposite. In both *United States v. Teitler,* 802 F.2d 606, 613 (2d Cir.1986), and *United States v. Ruggiero,* 726 F.2d 913 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984), the Second Circuit's holding that a conspiracy conviction requires at a minimum evidence of an agreement to commit two predicate acts was dependent on the facts that the two predicate acts necessary to prove a substantive RICO violation could not be proved. *Teitler* at 613 (citing *United States v. Ruggiero* ). Thus, in *Teitler,* the court held that the circumstantial evidence of the defendant's role in the fraudulent scheme, which included statements he made indicating knowledge of wrongdoing, his status as a partner in the firm engaged in the racketeering activity, and the testimony concerning his role in that firm, were sufficient for a jury to reasonably infer his agreement to participate in the enterprise. *Teitler* at 614. The facts alleged in this case in support of defendants' agreement to engage in a fraudulent scheme are significantly stronger than the evidence in *Teitler.* First, plaintiff's complaint alleges that both Kachanovsky and Khamidova en-

gaged in at least two predicate acts, and for purposes of this motion to dismiss, the court accepts the facts alleged in plaintiff's complaint as true. Second, even were plaintiff's allegations that defendants Kachnovsky and Khamidova each committed a minimum of two acts not supported by the facts, defendants' status as principals of the alleged enterprise, Feniks, along with their acts taken in furtherance of the fraudulent scheme, are more than sufficient from which to infer an agreement.

Because the complaint alleges facts sufficient to infer an agreement on the part of defendants Kachanovsky and Khamidova to defraud plaintiff, and acts undertaken in furtherance of that agreement, the conspiracy claim against defendant Kachanovsky and Khamidova stands.

*Failure to Plead Pursuant to 9(b)*

Finally, defendants argue that all of the claims against defendants Kachanovsky and Khamidova must be dismissed because of plaintiff's failure to plead fraud with the requisite particularity pursuant to Fed.R.Civ.P. 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

 To satisfy the requirements of Rule 9(b), the plaintiff must specify the statements contended to be fraudulent and the documents containing those statements; the time and place of each such fraudulent statement and the person who made (or in case of the omission did not make) the statement; and the content of the fraudulent statement, how it was misleading and the manner in which it was relied upon by the plaintiff. *Quintel Corp. v. Citibank,* 589 F.Supp. 1235, 1243 (S.D.N.Y.1984) (citing cases). However, while the circumstances of fraud must be pleaded specifically, fraudulent intent may be averred generally, as long as the complaint provides a factual basis that gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth. Thus, fraudulent intent is commonly pleaded by alleging facts showing a motive for committing fraud and a clear opportunity for doing so. *Center Cadillac v.*

*Bank Leumi Trust Co.*, 808 F.Supp. 213, 229 (S.D.N.Y.1992).

Defendants argue that the acts allegedly committed by these defendants in furtherance of the scheme to defraud Ventspils Nafta "do not give rise to a strong inference that they acted with the intent to defraud," because the facts do not show that defendants knew that the transactions they engaged in were unauthorized, or that either of these defendants received any of the proceeds of these transaction. Defendant's Memo. p. 36. Defendants' arguments on this point simply fly in the face of reason. Even were this court not required for purposes of this motion to dismiss to interpret the facts as alleged in the complaint in the light most favorable to plaintiff, it would be hard pressed to conclude that the acts undertaken by defendants Kachanovsky and Khamidova were undertaken without an intent to defraud. The facts pleaded with respect to defendants are not simply that they "aided and abetted" in the alleged fraud, but that they took active steps in furtherance of the scheme. These acts can in no sense be interpreted as "routine banking transactions," rather, they were acts undertaken by principals of one corporation with respect to the official corporate and financial documents and funds of another corporation which resulted in a significant amount of money being transferred to their own corporation. Defendants' contention that plaintiff has failed to demonstrate that Kachanovsky and Khamidova had a motive to defraud is simply incomprehensible, given that the fraudulent acts they allegedly undertook resulted in approximately two million dollars being transferred to the bank accounts of a corporation of which they were principals. Defendants' motion to dismiss the claims against defendants Kachanovsky and Khamidova pursuant to Rule 9(b) is denied.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied in its entirety.

SO ORDERED.