92 F.3d 1186
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Randall Lee HART, Defendant-Appellant.
 No. 95-6325.
 United States Court of Appeals, Sixth Circuit.
 Aug. 6, 1996.
 
 Before: BROWN, MARTIN, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Randall Lee Hart appeals from his jury conviction and sentence on five counts of mail fraud, in violation of 18 U.S.C. § 1341, and five counts of making false statements to a federal agency, in violation of 18 U.S.C. § 1001. On appeal, however, Hart does not contest his mail fraud conviction. Rather, Hart raises one issue: whether the district court committed reversible error when it instructed the jury that the materiality of Hart's false statements, under section 1001, was established as a matter of law. The district court sentenced Hart to concurrent terms of one year and eight months in prison and three years of supervised release; the court also fined Hart $4,000, and it imposed a $500 special assessment ($50 for each count against him). We AFFIRM.
 
 I.
 
 2
 In 1979, the Tennessee Valley Authority (TVA) established the "Commercial and Industrial Energy Conservation Financing Plan," whereby it financed the purchase and installation of new electrical equipment and weatherproofing for its customers. Under this program, customers applied for loans by submitting to TVA, inter alia, a contractor's invoice that stated the actual costs of the equipment and its installation. TVA would review its customers' applications and their contractors' invoices. Eventually, after a TVA employee had completed an "inspection for compliance" form, certifying that the work had been satisfactorily completed, the agency would loan to customers the actual cost amount stated on the contractor's invoice. TVA took a purchase money security interest in the equipment installed, and it relied on the contractors' invoices to prepare its Uniform Commercial Code filings and thereby perfect its security interest.
 
 
 3
 In 1989, Hart began to participate in TVA's program as a contractor. Hart solicited business by sending flyers and letters to churches and businesses in Memphis, Tennessee. Eventually, five churches chose Hart to install new heating and cooling equipment in their buildings. At each church, however, Hart made an initial proposal for the cost of heating and cooling equipment, and then he padded the invoices that he submitted to TVA, sometimes by several thousand dollars. The churches used the extra money to pay for new pews, a paved parking lot, and other improvements, but evidence also showed that Hart made a 30 to 40 percent profit on his work. Further, Hart had a partner inside TVA, Richard Tucker, who submitted the necessary "inspection for compliance" forms before Hart had completed the required work. Hart paid Tucker for his assistance, and Tucker later pled guilty to aiding and abetting mail fraud.
 
 
 4
 A federal grand jury in the Western District of Tennessee returned a 10-count indictment against Hart in 1995. The first five counts charged Hart with mail fraud, i.e., devising a scheme and artifice (and use of the mails) to defraud TVA, in violation of 18 U.S.C. § 1341. The latter five counts charged Hart with making false statements to an agency of the United States, in violation of 18 U.S.C. § 1001. All ten counts were based upon the same operative facts. Hart pled not guilty and stood trial in June of 1995.
 
 
 5
 The government presented evidence that Hart knew the actual cost of the items that TVA would properly finance when he submitted his invoices to TVA. The jury also heard that Hart told the various churches that TVA would loan them money for general repairs and renovations, and that he did so despite his knowledge that TVA's loan program was meant to cover only the actual costs of new, energy efficient equipment and its installation. Hart's invoices made no mention of any additional items to be purchased with the loan proceeds. Moreover, there was testimony that two pastors questioned Hart and Tucker about the propriety of the enterprise, and that Hart once responded that TVA only cared about the "bottom line," getting repaid. Hart testified in his own defense that he never received any guidelines from TVA about what was permissible, and that he never got any money from any of the churches above the amount on his original proposals.
 
 
 6
 After all the arguments to the jury, the district court first instructed the jury on the mail fraud charges against Hart. In those instructions, the court included a definition of materiality.[1] The court below then gave instructions as to the five essential elements of the section 1001 false statements offenses. Those elements, as set forth in the case of United States v. Chandler, 752 F.2d 1148, 1150 (6th Cir.1985), are: (1) the defendant made a statement, (2) which was false or fraudulent, (3) and material, (4) the statement was made knowingly and willfully, and (5) the statement was made within a federal agency's jurisdiction.
 
 
 7
 As the district court elaborated on the various elements of the false statement crime, it included this instruction on the materiality element:
 
 
 8
 Questions of materiality in a false statement case--well, let me restate that. The question of materiality in a false statement case is one of law for the Court to decide. I instruct you--the Court instructs you that the statements alleged in Counts 6, 7, 8, 9 and 10 are material. So that matter is resolved.
 
 
 9
 The court's instruction squared with Sixth Circuit law at the time. E.g., Chandler, 752 F.2d at 1150. Hart made no objection to the district court's instruction on materiality with respect to the charges under section 1001; his only objection to any of the jury instructions dealt with those pertaining to mail fraud.
 
 
 10
 The jury convicted Hart on all counts. A few days after Hart's trial, however, the Supreme Court held that the materiality of a statement under 18 U.S.C. § 1001 is a question for the jury. United States v. Gaudin, 115 S.Ct. 2310, 2314-20 (1995).
 
 II.
 
 11
 Under the rule established in Gaudin, the district court erred in the instant case when it failed to let the jury determine the materiality of Hart's statements with regard to the section 1001 charges. The only question before this court today, however, is whether that error is a "plain error," because Hart did not object to the instruction on materiality. Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); United States v. Segines, 17 F.3d 847, 851 (6th Cir.1994).
 
 
 12
 According to the Supreme Court, a reversal may be based upon errors such as the one in the instant case only if the error (a) is "plain," i.e., "clear" or "obvious," (b) affects substantial rights, which generally "means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings," and (c) " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " United States v. Olano, 507 U.S. 725, 731-32 (1993) (quoting, inter alia, United States v. Atkinson, 297 U.S. 157, 160 (1936)). As we explained recently,
 
 
 13
 In most cases a reviewing court must find the "plain error" to have been prejudicial to the defendant, using the same "harmless error" analysis as required by Rule 52(a), "with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice."
 
 
 14
 Segines, 17 F.3d at 851-52 (quoting Olano, 507 U.S. at 734).
 
 
 15
 Since the Supreme Court issued its opinion in Gaudin, the circuits have split in determining the nature of the error when a trial court fails to allow a jury to determine the element of materiality in a section 1001 case.[2] This court recently considered, in the aftermath of Gaudin, a case closely analogous to the instant case. The panel held that "[t]he effect of the trial court's failure to instruct the jury to determine the materiality of the allegedly false statements was harmless." United States v. McGhee, 87 F.3d 184, 187 (6th Cir.1996), petition for rehearing en banc filed (6th Cir. July 10, 1996).
 
 
 16
 In McGhee, the defendant "was convicted on fifteen counts of mail fraud and making false statements in violation of 18 U.S.C. § 1342 and 18 U.S.C. § 1001." Id. at 185. Although the jury instructions were almost identical to those in the instant case, the court synthesized three cases[3] and found the error harmless, reasoning that "the jury had to find the existence of predicate facts" to a materiality finding "beyond a reasonable doubt." Id. at 187. Further, the court noted that the jury heard evidence of the falsity of McGhee's statements, and evidence of McGhee's intent to make those statements.
 
 
 17
 Because of the markedly similar nature of the facts and theory of the McGhee case and the instant case, we hold that the McGhee panel's decision is directly on point. Both defendants were charged with the same crimes, stemming from analogous operative facts. Both defendants' juries heard similar evidence and received similar instructions on materiality from the district court. Because McGhee controls here, despite Hart's contention that the McGhee decision is erroneous, the circuit precedent rule mandates that we follow it, e.g., Salmi v. Secretary of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985), and thus we hereby AFFIRM Hart's conviction and sentence.[4]
 
 
 
 [1]
 The district court charged: "The fraudulent representation or statement must relate to a material fact or matter. A material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relaying [sic] upon the representation or statement in making a decision
 "This means if you find a particular statement or fact to have been false, you must determine whether that statement was one that a reasonable person might have considered important in making his or her decision. The same principle applies to fraudulent half truths or omissions of material facts."
 
 
 [2]
 Compare United States v. David, 83 F.3d 638, 641-46 (4th Cir.1996) (holding that, where the defendant did not object to a materiality instruction similar to the one in the instant case, the district court's failure to instruct the jury on materiality was plain error) and United States v. Raether, 82 F.3d 192, 194 (8th Cir.1996) (holding that, where the defendant objected to instructions similar to those in the case at bar, it was not persuaded beyond a reasonable doubt that the district court's instruction played no significant role in the jury's finding of guilt) with United States v. Winstead, 74 F.3d 1313, 1320-21 (D.C.Cir.1996) (holding, in a case similar to the instant case, that the failure to instruct on materiality was not plain error, because the jury necessarily first considered the issue with respect to mail fraud charges)
 
 
 [3]
 The McGhee court relied on United States v. Lopez, 71 F.3d 954, 959 (1st Cir.1995), cert. denied, 64 U.S.L.W. 3837 (U.S. June 17, 1996) (No. 95-8569); United States v. Allen, 76 F.3d 1348, 1367 (5th Cir.1996), petitions for cert. filed, (U.S. May 28, 1996) (Nos. 95-9169, 95-9196, 95-9205); and Rose v. Clark, 478 U.S. 570, 580 (1986)
 
 
 [4]
 Moreover, the District of Columbia Circuit's recent holding in the similar Winstead case, 74 F.3d at 1320-21, supports this result