**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 04-2244**

TIMOTHY HAMILTON HELSABECK,

Plaintiff - Appellant,

versus

MICHAEL A. FABYANIC, Individually and as a
Deputy of the Sheriff of Frederick County,
Virginia,

Defendant - Appellee.

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg. Glen E. Conrad, District
Judge. (CA-00-105-GEC)

Argued: November 30, 2005          Decided: March 30, 2006

Before MICHAEL and DUNCAN, Circuit Judges, and Walter D. KELLEY,
Jr., United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Steven Mark Garver, GARVER LAW OFFICES, P.C., Reston,
Virginia, for Appellant. Carlene Booth Johnson, PERRY & WINDELS,
Dillwyn, Virginia, for Appellee. **ON BRIEF:** Deborah E. Mayer,
GARVER LAW OFFICES, P.C., Reston, Virginia; E. Eugene Gunter,
Winchester, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Deputy Sheriff Michael Fabyanic shot Timothy Helsabeck in the back while trying to arrest him for possession of marijuana. Helsabeck brought this lawsuit against Fabyanic, asserting a claim under 42 U.S.C. § 1983 for use of excessive force and a claim under state law for battery. After a four day trial, a jury found that Fabyanic used excessive force, but that he was entitled to qualified immunity. The jury also found that Fabyanic did not commit battery upon Helsabeck. The district court entered judgment for Fabyanic, and Helsabeck appeals. Helsabeck argues that the district court made several errors at trial, including the submission of the qualified immunity issue to the jury. Finding no reversible error, we affirm.

I.

On the evening of December 29, 1998, Helsabeck was driving his pickup truck on Route 37, the western by-pass around Winchester, Virginia. Fabyanic, a Frederick County Sheriff's Deputy, was driving his cruiser behind Helsabeck. Fabyanic observed Helsabeck driving erratically and pulled him over. Fabyanic approached Helsabeck's pickup on foot and asked to see his driver's license and registration. According to Fabyanic, Helsabeck appeared agitated and his hands were shaking. Fabyanic ordered Helsabeck to exit and stand in front of the pickup so that

2

Fabyanic could watch him while he (Fabyanic) ran a criminal history check on Helsabeck. Fabyanic then conducted field sobriety tests on Helsabeck, placed him in the back of the cruiser, and searched his pickup. While conducting the search, Fabyanic learned from a radio dispatcher that Helsabeck's criminal history included narcotics and weapons violations. Fabyanic then found a small amount of marijuana in the pickup. At this point, he approached Helsabeck, still seated in the back of the cruiser, and told him he was placing him under arrest for possession of marijuana. Fabyanic ordered Helsabeck to exit the cruiser and place his hands on the cruiser's roof.

The parties disagree about the sequence of events that followed. Although there is no dispute that Helsabeck and Fabyanic made physical contact with one another and that Fabyanic shot Helsabeck in the back, the parties offer differing versions of the surrounding events. Helsabeck contends he had his hands on the roof of the car and waited to be handcuffed for what seemed to him a long time, at least twelve seconds. Thinking he might be in "harms way," he turned around. J.A. 123. At this point he lost his balance because the ground where he stood was uneven and frozen. He tried to catch himself, but instead he hit Fabyanic and, as a result, both men went down the slope into the ditch along the side of the road. As Helsabeck tried to get up on all fours and climb the hill, Fabyanic shot him in the back.

3

Fabyanic, on the other hand, says that while he was trying to handcuff Helsabeck, Helsabeck turned around, took a punch at Fabyanic, grabbed Fabyanic around the waist, and drove his shoulder into Fabyanic's mid-section. Helsabeck then began forcing Fabyanic backwards down the slope toward the ditch. During this struggle, Fabyanic claims he felt something tugging at his holster and thought that Helsabeck was trying to grab his gun. In response, Fabyanic drew his gun and shot Helsabeck in the back.

Helsabeck was severely injured by the gunshot and became a paraplegic. In December 2000 Helsabeck filed this suit against Fabyanic under 42 U.S.C. § 1983, alleging that Fabyanic violated his constitutional rights by using excessive force during the arrest. He also asserted a state law battery claim against Fabyanic. In May 2004 Fabyanic moved for summary judgment on all claims and on the ground that he was entitled to the defense of qualified immunity. On June 2, 2004, the district court denied Fabyanic's motion, concluding that there was a genuine issue of material fact regarding the circumstances surrounding the use of force.

The district court bifurcated the trial into liability and damages phases. The liability phase was tried before a jury on June 14-18, 2004. The district court made three evidentiary rulings in connection with the trial that are at issue on appeal. First, the district court excluded evidence offered by Helsabeck

4

concerning Fabyanic's actions during arrests of other individuals. Second, the court allowed testimony from Dr. Ashley Tucker, Helsabeck's treating physician following the incident. Dr. Tucker testified that in the course of treating Helsabeck, Helsabeck spontaneously stated that he had "tried to get the gun away, before he was shot, from the police officer." J.A. 304. Third, the court allowed evidence showing that Helsabeck was convicted of felony assault and battery in Virginia state court as a result of the altercation with Fabyanic. Prior to admitting evidence of the conviction, the court warned the jury:

> The defendant's counsel intends to ask the plaintiff about a state criminal proceeding, [in] which the plaintiff was a defendant as a result of this incident. And he was, indeed, convicted of a state criminal act because of this incident. I tell you that this testimony and this line of questioning should not be taken as evidence by you that one side, that it should not be deemed dispositive of the issues in this case. Indeed, the plaintiff's assertions in this case and the fact of this earlier conviction are not necessarily mutually exclusive. The reason that we're having this testimony, though, is to help you understand what credit, what measure of believability should be accorded to the statements of the various witnesses. That's for this purpose only. You are the judges of the facts and you will use this evidence, along with all the other evidence that is presented, in weighing these issues of credibility.

S.J.A. 119. The court included an additional warning about this evidence in its final jury instructions:

> [Y]ou heard testimony that plaintiff was convicted of assault and battery against the defendant. This evidence was admitted for the limited purpose of assisting you in judging the plaintiff's credibility and in deciding whether or not defendant acted reasonably. It was

5

admitted for no other purpose. I tell you specifically that you may not consider the evidence of plaintiff's prior conviction as determinative of the facts at issue in this case, specifically those related to the use of excessive force. You and you alone are to decide the facts based on all the evidence presented in this trial. The evidence of plaintiff's prior conviction is simply part of the evidence you may wish to consider.

J.A. 378.

After the instructions were read to the jury, the jury left the courtroom and the parties were asked whether they had objections to the instructions as given. Helsabeck stated that he had only one "concern" regarding references to "proximate cause" and "damage" in the instructions. J.A. 386-87. The court agreed to address this concern by supplementing the instructions with a cautionary statement to the jury. The court then asked if Helsabeck had any other objection, and he responded in the negative. In accordance with Helsabeck's objection, the court also changed the word "damage" in the jury instructions to "injury," presumably to clarify that Helsabeck did not need to prove damages for the jury to find in his favor. J.A. 461a.

The court submitted three interrogatories to the jury. The first interrogatory read, "Do you find from a preponderance of the evidence that Defendant Fabyanic used excessive force during the arrest of Plaintiff Helsabeck?" J.A. 476. The second interrogatory dealt with Fabyanic's asserted qualified immunity defense. It read, "Do you find from a preponderance of the evidence that Defendant Fabyanic's conduct was objectively

6

reasonable in light of the legal rules clearly established at the time of the incident at issue in the case?" Id. Finally, the third interrogatory read, "Do you find from a preponderance of the evidence that Defendant Fabyanic committed a battery on Plaintiff Helsabeck under Virginia law?" Id. On June 18, 2004, the jury answered "yes" to the first two interrogatories and "no" to the third interrogatory.

Helsabeck subsequently moved to set aside the verdict or alternatively for a new trial, arguing that the court erred in submitting the question of a qualified immunity (the second interrogatory) to the jury and in making certain evidentiary rulings. On August 31, 2004, the district court denied these motions and entered judgment for Fabyanic. Helsabeck timely appeals.


II.

Helsabeck argues that the district court erred in submitting the qualified immunity interrogatory to the jury. Government officials are entitled to qualified immunity from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity, the relevant inquiry

7

is whether it would be clear to an objectively reasonable officer that his conduct violated the right at issue. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002).

Because Helsabeck failed to object to submission of the interrogatory to the jury at trial, we review for plain error. In re Celotex Corp., 124 F.3d 619, 630-61 (4th Cir. 1997) (citing United States v. Olano, 507 U.S. 725 (1993)). Under this standard of review, we may exercise our discretion to correct an error not raised in district court if (1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) we determine, after examining the particulars of the case, that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.

A.

In reviewing for plain error, the initial question is whether an error occurred. In Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005), we held that the question of a defendant's entitlement to qualified immunity under a particular set of facts must be decided by the court, not by the jury. The district court in the present case therefore committed error when it submitted the qualified immunity interrogatory to the jury.

B.

The second question is whether the error was plain.  For the purposes of plain error review, "plain" is synonymous with clear or obvious.  <u>Olano</u>, 507 U.S. at 734.  Although it is clear that the district court committed error under <u>Willingham</u>, that case was not decided until more than one year after the jury delivered its verdict in favor of Fabyanic.  The applicable law in this circuit was unsettled at the time of trial.  In <u>Knussman v. Maryland</u>, 272 F.3d 625, 634 (4th Cir. 2001), we noted that "it is far better for the court, not the jury, to answer the ultimate legal question of whether a defendant is entitled to qualified immunity."  Because the issue was not raised by the parties in that case, however, we had to "leave for another day the question of whether it is ever appropriate for a jury to answer the ultimate legal question of a defendant's entitlement to qualified immunity." <u>Id.</u>

The Supreme Court has not addressed whether plain error may be noticed in cases such as this one, where the law is unsettled at the time of trial but becomes clear on appeal.  <u>See</u> <u>United States v. David</u>, 83 F.3d 638, 642 (4th Cir. 1996).  In <u>David</u> we held that an appellate decision after trial renders an error "plain" if "an objection at trial would have been indefensible because of existing law, but a supervening decision prior to appeal reverses that well-settled law, rendering [a party's] claim clearly

9

meritorious." <u>Id.</u> at 645. In this case an objection at trial would not have been "indefensible," and <u>David</u>'s holding therefore does not control. In arriving at this conclusion, however, we discussed reasons why review should not be available in cases like this one, where applicable law is unsettled at the time of trial. Because there was some debate about whether this discussion was essential to our holding, <u>see</u> <u>id.</u> at 648-49 (Ervin, J., concurring), we assume without deciding that the error in this case was "plain."

## C.

The third question is whether the error affected Helsabeck's substantial rights, that is, whether it was prejudicial. Errors that actually affect the outcome of the proceedings are prejudicial. <u>United States v. Hughes</u>, 401 F.3d 540, 548 (4th Cir. 2005). In this case, there is no way to conclude that the error did not affect the outcome. The outcome here -- the finding that Fabyanic was entitled to qualified immunity -- can be attributed to nothing other than the error -- submission of a specific interrogatory on qualified immunity to the jury. The error therefore affected Helsabeck's substantial rights.

The final issue is whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. We conclude that it does not, and we therefore decline to notice this error even if it was "plain." Although the constitutional violations Helsabeck alleges are significant and his injuries extremely serious, we are satisfied with the procedural fairness of this case. The record contains ample documentation of careful efforts by the parties and the court to ensure the proper submission of issues to the jury. Nothing in the pre-verdict record suggests that Helsabeck did not want the jury to decide the issue of qualified immunity. As noted above, when the court specifically asked the parties if they had any objections to the jury instructions, Helsabeck, through his counsel, noted only one "concern," which had nothing to do with qualified immunity. Helsabeck's counsel asserts that he did not raise the objection at that point in trial because he "vehemently" objected during discussions in chambers and considered it "futile and a waste of judicial time" to assert the objection at trial. Appellant's Supplemental Br. at 2-3. He further argues that it would be "manifestly unjust" to penalize Helsabeck for the district court's failure to record the objections that he raised in chambers because he did not have control over the court reporter. Id. at 4-5. We are puzzled by these arguments. Although Helsabeck's counsel may

11

not have been able to arrange for a court reporter to be present in chambers, he was no doubt aware that the discussions in chambers were not being recorded. Given the "vehemen[ce]" with which he purportedly objected in chambers, his failure to reiterate the objection at any point on the record is inexplicable. Id. at 2. As Helsabeck's counsel surely knows, it is the duty of the parties, not the court or the court reporter, to preserve objections on the record for appeal. Counsel's efforts to attribute the inadequacies of the record to the district court and its court reporter are unavailing.

Furthermore, it is well-established that plain error analysis is to be used "sparingly" and to correct only "particularly egregious errors." United States v. Young, 470 U.S. 1, 15 (1985). Federal Rule of Criminal Procedure 52(b) gives appellate courts the discretion to correct certain forfeited errors in criminal cases, where a defendant's life or liberty is at stake, but there is no analogous statutory authority for courts to notice plain error in civil cases, where the stakes are of a different kind. Accordingly, many courts have noted that the plain error doctrine should be invoked with "extreme caution" in the civil context. See Celotex, 214 F.3d at 631 (citing cases). This case does not present the type of egregious error that calls for correction by this court.

III.

Helsabeck's second argument is that the district court abused its discretion by excluding evidence regarding Fabyanic's prior bad acts. Helsabeck sought to introduce witnesses who would have testified that Fabyanic treated them unreasonably during their arrests in order to prove Fabyanic's routine method of operation, see Fed. R. Evid. 404(b), and to impeach Fabyanic's credibility. The court barred Helsabeck from using the evidence in his case-in-chief and on cross examination, but allowed him to use it for impeachment or rebuttal. J.A. 47. The district court did not abuse its discretion in finding this evidence inadmissible under Rule 404(b). The facts of the witnesses' cases were not sufficiently similar to Helsabeck's case to establish an operating method on Fabyanic's part. See United States v. Mohr, 318 F.3d 613, 617-19 (4th Cir. 2003).

IV.

Third, Helsabeck argues that the district court should have excluded Dr. Tucker's testimony about Helsabeck's statements at the hospital because Helsabeck asserted the physician-patient privilege. The Federal Rules of Evidence do not recognize a physician-patient privilege where, as here, subject matter jurisdiction is based on federal law. See Fed. R. Evid. 501. Helsabeck nonetheless urges us to hold that the Virginia law on

13

physician-patient privilege, Va. Code Ann. § 8.01-399(A), applies here because he asserts a pendent state law battery claim. Even if we found the Virginia privilege rule applicable, Helsabeck waived the privilege by putting his medical condition at issue, releasing his medical records, and failing to object when Fabyanic submitted Dr. Tucker's testimony with his summary judgment motion. See Va. Code Ann. § 8.01-399(B). We therefore conclude that the district court did not err by admitting Dr. Tucker's testimony.

V.

Fourth, Helsabeck argues that the district court abused its discretion by allowing evidence regarding Helsabeck's underlying assault and battery conviction. District courts have broad discretion to admit relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Although the evidence of Helsabeck's underlying conviction was arguably prejudicial to his case, we cannot say that the district court abused its discretion in determining that the danger of unfair prejudice did not substantially outweigh its probative value. Furthermore, even if admission of the conviction was erroneous, we are satisfied that the district court's thorough cautionary instructions rendered any error harmless.

14

VI.

Finally, Helsabeck argues that the district court erred in giving initial jury instructions stating that Helsabeck must prove that Fabyanic's act was the cause of the "damage" Helsabeck suffered. The word "damage" was not the best choice for the jury instructions because the trial had been bifurcated and damages were not at issue at the time. Upon realizing the mistake, however, the district court agreed to give an oral cautionary statement to the jury. It also replaced the word "damage" with "injury" in the written instructions given to the jury. J.A. 461a. If any error was made in connection with the court's use of the word "damage," the court's rehabilitative steps rendered the error harmless.

***

For the foregoing reasons, we find no reversible error. The district court's judgment for Fabyanic is therefore

AFFIRMED.

15